NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0216n.06

No. 09-2294

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 06, 2011*

LEONARD GREEN, Clerk

PIPEFITTERS LOCAL 636
INSURANCE FUND, et al.,

        **Plaintiffs-Appellees,**

v.

BLUE CROSS & BLUE SHIELD
OF MICHIGAN,

        **Defendant-Appellant.**

_____/

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN**

**BEFORE: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.**

**SUHRHEINRICH, Circuit Judge.** In this interlocutory appeal Defendant Blue Cross Blue

Shield of Michigan ("BCBSM") appeals from an injunctive order of the district court requiring

BCBSM to provide Plaintiff Pipefitters Local 636 Insurance Fund and its Trustees ("Fund") certain

documents that disclose BCBSM's discount arrangements with medical service providers ("discount

information"). We REVERSE.

**I. Background**

This case is the subject of a prior appeal. *See Pipefitters Local 636 v. Blue Cross & Blue

Shield of Mich.*, 213 F. App'x 473 (6th Cir. 2007) (hereinafter *Pipefitters I*). The facts and

applicable law are laid out in that opinion, which we incorporate by reference here. We highlight

those facts and law most pertinent to this appeal.

The Fund is a multi-employer trust fund established under and administered pursuant to the Taft-Hartley Act, section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* BCBSM is a Michigan non-profit corporation established pursuant to the Nonprofit Health Care Corporation Reform Act ("NHCCRA"), Mich. Comp. Laws § 550.110, *et seq.*

In June 2002, the Fund converted from an experience rated (i.e. insured) group customer of BCBSM to a self-funded plan, and entered into an Administrative Services Contract ("ASC") with BCBSM. The ASC describes the administrative services that BCBSM provides for the Fund's medical benefits plan, including but not limited to: automated claims processing, financial management and reporting, cost containment initiatives, provider utilization audits, services for participant inquiries and/or participant communications, maintenance of all necessary records, provider utilization audits, and participation in trustee meetings. The ASC expressly states that "BCBSM is not the Plan Administrator, Plan Sponsor, or a named fiduciary for purposes of [ERISA] and its obligations shall be limited to the processing and payment of Enrollees' claims as provided herein."

Throughout their contractual relationship, BCBSM has provided the Fund with comprehensive monthly and quarterly reports containing aggregate claims data. These reports show the Fund the exact price it pays for medical services and where, when, how and how much was spent. As noted, the comprehensive financial data provides the Fund with the aggregate, or collective, claims experience and discount information.

In April 2003, the Fund requested that BCBSM turn over "claims records" providing both the specific amount charged by the provider before application of the discount as well as the specific amount paid to that provider for each individual hospital, physician, and prescription drug claim

2

since the beginning of the ASC – the so-called "discount information." The information was requested outside of the contractually agreed-upon audit procedures. BCBSM declined to reveal the discount arrangements, claiming it would reveal highly confidential proprietary discount arrangements with medical service providers and, as such, would be an improper intrusion into BCBSM's business affairs.

In 2004, the Fund sued BCBSM, alleging that BCBSM had a contractual obligation under the ASC to disclose certain claims-related information and that BCBSM breached an ERISA fiduciary duty by refusing to provide it (hereinafter characterized as the "First Amended Complaint"). The First Amended Complaint also asserted that BCBSM breached its ERISA fiduciary duty for imposing and failing to disclose an "Other Than Group" ("OTG") subsidy, a type of "cost transfer subsidy" to subsidize coverage for non-group clients. The district court granted BCBSM's motion to dismiss the Fund's First Amended Complaint in its entirety.

The Fund appealed. This court affirmed in part and reversed in part. *See Pipefitters I*, 213 F. App'x 473. The *Pipefitters I* court affirmed the dismissal of the Fund's claim that BCBSM breached an ERISA fiduciary duty when it refused to supply the discount information. It held that "the complaint does not sufficiently allege a claim for relief under ERISA with regard to BCBSM's decision not to release the specified claims-related information in the manner requested." *Id.* at 480.

The *Pipefitters I* court reversed the dismissal of the separate OTG fiduciary claim, finding that "the Fund's complaint sets forth sufficient allegations that BCBSM acted as a fiduciary under ERISA in assessing and failing to disclose the OTG subsidy fees" and "remand[ed] for further proceedings consistent herewith." *Id.*

On remand, the Fund moved to amend its complaint to correct the "pleading issues" raised by this court relative to the discount information claim. Over BCBSM's objection, the district court

3

allowed the Fund to file a Second Amended Complaint. Count III of the Second Amended Complaint purportedly cured the pleading defects of the First Amended Complaint as discussed in *Pipefitters I*.[1] Soon thereafter, BCBSM filed a motion for partial summary judgment to dismiss Count III, which the district court denied as premature. Both parties later filed motions for summary judgment.

On September 1, 2009, the district court held a hearing on the parties' respective motions for summary judgment. The district court issued an oral ruling from the bench. First, the district court held that BCBSM was an ERISA fiduciary when it collected the OTG fee, because it exercised authority or control over the Plan assets. The court also held that BCBSM breached its fiduciary duty by assessing the fee, based on its conclusion that the OTG fee constituted an impermissible cost transfer under Mich. Comp. Laws § 550.1211(2).[2]

Next, the district court ruled that BCBSM was acting as an ERISA fiduciary when it denied the Fund's request for the discount information. Initially, the court stated that the Fund failed to provide an affidavit or deposition testimony suggesting that the contractual audit procedure or aggregate reports were not sufficient for determining discount information, characterizing the failure as "a weakness in the Funds' case," and that the Fund further failed to "provide[] an affidavit or deposition testimony suggesting that Blue Cross exercised discretion and authority in the way it negotiated these discounts." "[H]owever," because the district court found that it was "clear that

---

[1] In its brief the Fund asserts that "[t]he Second Amended Complaint now contains extensive factual detail of the additional fiduciary duties arising from the discretionary authority possessed by Defendant regarding all activities through which Blue Cross accumulates financial information concerning plan assets."

[2] This issue remains before the district court, although the court's certification of a class action as to that claim is also currently before this court. *See Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.*, No. 2607 (6th Cir., filed Dec. 18, 2009).

Blue Cross negotiated these discounted rates[,] . . . [a]nd as a matter of law, such negotiations ha[ve] to involve discretion," the district court concluded that BCBSM was a fiduciary in negotiating the rates and "has a duty to tell the Funds what those discounts are."

The district court further ruled that

> [a]ny argument that [the] Sixth Circuit has already decided that Blue Cross isn't a fiduciary with respect to the Plaintiff's records relies on dicta from the Sixth Circuit opinion. And this is a rather esoteric point, but I believe that dicta, even though it is in the case, does not become law of the case.

The district court granted the Fund's motion for summary judgment on Count III and denied BCBSM's motion as to that count.

On September 3, 2009, the district court entered its order granting in part and denying in part the parties' motions for summary judgment. The order granting the Fund summary judgment had the practical effect of granting injunctive relief because, in the Second Amended Complaint, the Fund sought an "Order [for] BCBSM to provide access to Claims Records as requested by the Fund[]." Therefore, on October 2, 2009, BCBSM filed a timely notice of interlocutory appeal to this court under 28 U.S.C. § 1292(a)(1). On November 12, 2009, the Fund in turn filed a motion to dismiss this appeal on the grounds that this court lacked jurisdiction, because the September 3 order did not expressly direct BCBSM to produce the discount information by a specific date.

Meanwhile, on October 5, 2009, BCBSM filed in the district court a motion to stay the district court proceedings pending resolution of its appeal. On December 18, 2009, the district court denied BCBSM's motion and required BCBSM to provide the discount information to the Fund by January 15, 2010. However, the district court conditioned production of the discount information on "a protective order allowing for the disclosure of

5

the records solely for purposes of preparation of or use in this matter," and requiring that they be used solely by the Fund's legal counsel and not shared with any of BCBSM's competitors.

Subsequently, BCBSM filed a motion in this court seeking a stay of the district court proceedings. On January 13, 2010, this court denied the Fund's motion to dismiss the appeal for lack of jurisdiction, finding that the summary judgment order and the district court's subsequent enforcement order had the practical effect of an immediately appealable injunctive order pursuant to 28 U.S.C. § 1292(a)(1). This court further found that the protection afforded by the district court's December 18 protective order was sufficient, and denied BCBSM's motion for a stay. Finally, this court expedited the appeal.

## II.  Analysis

On appeal, BCBSM contends that the district court erred in granting summary judgment to the Fund on Count III of the Second Amended Complaint because: (1)  the count had been previously dismissed by the district court and that dismissal had been affirmed by this court; (2) the district court granted summary judgment *sua sponte* on grounds not argued or briefed by the parties; (3) the decision is wrong because BCBSM is not an ERISA fiduciary with respect to the administration of the Fund's benefit plan merely because it negotiates with providers as part of its overall business strategy; and (4) the Fund failed to present any evidence to support its claim. The Fund counters each of these contentions, and argues that the appeal is moot.

Initially, we consider our jurisdiction. This court held that we have  jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) in our January 13, 2010 decision. Accordingly, we may review all issues that are "inextricably intertwined" with the portion of the order from which

6

the appeal is taken. *See Hadix v. Johnson*, 228 F.3d 662, 669 (6th Cir. 2000) ("The doctrine of pendent appellate jurisdiction allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably intertwined' with matters over which the appellate court properly and independently has jurisdiction." (citation and internal quotation marks omitted)). This court has interpreted "inextricably intertwined" as "coterminous with, or subsumed in, the claim before the court on interlocutory appeal." *Id.* (citation and internal quotation marks omitted). *See also United States v. Contents of Accounts*, 629 F.3d 601, 606 (6th Cir. 2011) (summarizing the scope of pendent appellate jurisdiction, and noting that "the 'inextricably intertwined' requirement is satisfied only if the resolution of the properly appealable issue 'necessarily and unavoidably' decides the non-appealable issue"). The district court's partial summary judgment ruling is the basis for, and is inextricably intertwined with, the order requiring production of the discount information. We therefore have jurisdiction to review that ruling.

This court reviews a district court's grant of summary judgment de novo. *ACLU of Ky. v. Grayson Cnty. Ky.*, 591 F.3d 837, 843 (6th Cir. 2010) (citation omitted). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

Because we conclude that BCBSM's first argument–that the Fund's discount information claim was already decided by this court– is dispositive, we need address that issue only. We recently summarized the law of the case doctrine as follows:

> The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir.2004) (quoting *Arizona*

7

*v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). The doctrine precludes a court from reconsideration of issues "decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir.1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir.1989)). Pursuant to the law of the case doctrine, and the complementary "mandate rule," upon remand the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Id*. (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)). The trial court is required to "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces." *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir.1995).

*Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). Thus, "[t]he law of the case doctrine precludes reconsideration of a previously decided issue unless one of three 'exceptional circumstances' exists." *Id.* These are "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id.* (citation omitted).

In *Pipefitters I*, this court explicitly ruled that the Fund's complaint and supporting documents did "not sufficiently allege a claim for relief under ERISA with regard to BCBSM's decision not to release the specified claims-related information in the manner requested." *Pipefitters I*, 213 F. App'x at 480. The *Pipefitters I* court also held that "[d]iscretionary authority does not exist where a party merely decides to adhere to an existing contract term . . . or makes business decisions on its own behalf, outside of its role as plan administrator." *Id.* at 479 (citation omitted). The court then "affirm[ed] the district court's dismissal of the Fund's claims arising from BCBSM's refusal to release claims-related information." *Id.* at 480.

In other words, this court's mandate dismissed the Fund's claim on the merits, as part of its determination whether the First Amended Complaint stated a claim for breach of an ERISA

8

fiduciary duty. This ruling does not contemplate or permit the filing of an amendment.[3] The district court's statement that the ruling was mere dicta is contrary to "both the letter and the spirit of the appellate court's mandate." *See Westside Mothers*, 454 F.3d at 538 (internal quotation marks omitted). Thus, the *Pipefitters I* decision affirming the dismissal "govern[s] the same issues in subsequent stages" of the case, *see id.*, and the district court was required to dismiss Count III.

Nor do any of the exceptions apply, and the Fund does not in any meaningful way claim otherwise.[4] Instead, the Fund asserts that the amendment was appropriate given the liberal standard applied to amendments under Fed. R. Civ. P. 15(a). We disagree. Although Fed. R. Civ. P. 15(a) provides that amendment "shall be freely given when justice so requires," an amended complaint cannot be filed if "a plaintiff chooses to appeal from a judgment of dismissal" rather than amending his complaint, and that order of dismissal is affirmed. *Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1066 (1st Cir. 1991). Indeed, were we to accept the Fund's argument, we would be reducing the ruling in *Pipefitters I* "to an advisory opinion from the Court informing [the Fund] of the deficiencies of the complaint" and giving it "an opportunity to cure those deficiencies." *Cf. Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (emphasis omitted) (reviewing

---

[3]In contrast, the *Pipefitters I* court reversed the district court's dismissal of the Fund's claims arising out of the BCBSM's imposition of the subsidy fee and remanded "for further proceedings consistent herewith." 213 F. App'x at 480.

[4]The Fund suggests that the law of the case doctrine may not apply because "different circumstances or evidence is present." However, this exception applies only if the record actually contains new evidence and "if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision." *Hamilton v. Leavy*, 322 F.3d 776, 788 (3d Cir. 2003) (citation omitted). There is no substantive difference between the First Amended Complaint and the Second Amended Complaint on the issue of whether the Fund's alleged facts establish that BCBSM breached an ERISA fiduciary duty by failing to release the discount information. In short, the exception does not apply in this case.

a district court's denial of a post-judgment action).  The Fund has no right to such an entitlement.
*See id.*

### III.  Conclusion

The judgment of the district court granting the Fund summary judgment on Count III of the Second Amended Complaint is **REVERSED** and the matter is **REMANDED** for an entry of an order granting partial summary judgment to BCBSM on this count.  The December 18 order requiring production of the discount information is **VACATED**.