*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PIPEFITTERS LOCAL 636 INSURANCE FUND,
Trustees of; JOHN GREEN; CHARLES INMAN;
JOHN O'NEIL; GREG SIEVERT; E. THOMAS
DEVLIN; GERALD HOOVER,
　　　　　　　　　*Plaintiffs-Appellees,*

　　　　　*v.*

BLUE CROSS BLUE SHIELD OF MICHIGAN,
　　　　　　　　　*Defendant-Appellant.*

No. 09-2607

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73400—Arthur J. Tarnow, District Judge.

Argued: January 11, 2011

Decided and Filed: August 12, 2011

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Francis R. Ortiz, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellant. Ronald S. Lederman, SULLIVAN, WARD, ASHER & PATTON, Southfield, Michigan, for Appellees. **ON BRIEF:** Francis R. Ortiz, Phillip J. DeRosier, Toby A. White, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellant. Ronald S. Lederman, Sharon S. Almonrode, SULLIVAN, WARD, ASHER & PATTON, Southfield, Michigan, for Appellees. Christopher L. Kerr, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Amicus Curiae.

　　　　SUHRHEINRICH, J., delivered the opinion of the court, in which ROGERS, J., joined. CLAY, J. (pp. 21–26), delivered a separate opinion dissenting in part.

--------

**OPINION**

--------

SUHRHEINRICH, Circuit Judge.  Defendant-Appellant, Blue Cross Blue Shield of Michigan ("BCBSM"), brings this interlocutory appeal following the district court's certification of a class action on behalf of Plaintiffs-Appellees, Pipefitters Local 636 Insurance Fund and its Trustees ("Fund"), and the proposed class, in this action brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.§§ 1001 *et seq*.  Because this class action is not the superior method of adjudication required under Federal Rule of Civil Procedure 23(b)(3), and prosecuting separate actions does not present the risk of inconsistent adjudications required under Federal Rule of Civil Procedure 23(b)(1)(A), we **REVERSE**.

## I. BACKGROUND

This case is the subject of a prior appeal, *Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.* (*Pipefitters I*), 213 F. App'x 473 (6th Cir. 2007), as well as a companion appeal, decided on April 6, 2011, *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*(*Pipefitters II*), No. 09-2294, 2011 WL 1320684 (6th Cir. Apr. 6, 2011) (unpublished).[1]  We adopt the background as set forth in our *Pipefitters I* opinion:

> The [Fund] is a multiemployer trust fund administered pursuant
> to ERISA and the Labor Management Relations Act, 29 U.S.C. § 186, for
> the purpose of providing health and welfare benefits to its participants
> and beneficiaries.  For several years, the Fund was an insured group
> customer of BCBSM, purchasing insurance coverage by paying
> premiums. The Fund converted in June 2002 to a self-funded plan,

--------

[1]The *Pipefitters II* appeal and this appeal were consolidated for purposes of oral argument.  In *Pipefitters II*, BCBSM appealed the district court's decision requiring it to share with the Fund information on the discount rates BCBSM negotiated with health care providers, information which BCBSM deemed proprietary.  We reversed the district court's order granting summary judgment to the Fund and vacated the injunctive order requiring BCBSM to share the information because we had dismissed that claim on the merits in *Pipefitters I*, and the law of the case doctrine barred its relitigation. *See Pipefitters II*, 2011 WL 1320684, at \*5-\*6 (citing *Pipefitters I*, 213 F. App'x at 480).

providing benefits by using fund assets. At that time, the Fund entered into an Administrative Services Contract ("ASC") with BCBSM for services including: claims processing; financial management and reporting; negotiation of participating provider agreements; cost containment initiatives; maintenance of all necessary records; and provision of information through established audit procedures.

Under the terms of the ASC, the Fund agreed to pay claims and administrative charges, including amounts billed during the year, hospital prepayments, actual administrative charges and group conversion fee, any late payment charges, statutory and/or contractual interest, and "[a]ny other amounts which are the Fund's responsibility pursuant to this Contract." The ASC also states that "[t]he Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State Insurance Commissioner as authorized pursuant to [Michigan law] will be reflected in the hospital claims cost contained in Amounts Billed."

From June 2002 to January 2004, BCBSM collected from the Fund [a cost transfer subsidy fee, known as the Other-Than-Group ("OTG") subsidy,] to subsidize coverage for non-group clients. The OTG subsidy was regularly collected from BCBSM's group clients. Self-insured clients, however, were not always required to pay the fee, and the parties dispute whether Michigan law authorized the imposition of OTG subsidy fees on such clients. In January 2004, BCBSM unilaterally eliminated the OTG subsidy charge to the Fund.

*Id*. at 474-475 (some alterations in original) (footnotes omitted) (citations omitted).

In September 2004, the Fund sued BCBSM, alleging that BCBSM breached its fiduciary duty under ERISA by imposing and failing to disclose the OTG subsidy from June 2002 to January 2004. Specifically, the Fund claimed that the OTG assessment violated Mich. Comp. Laws § 550.1211(2), which precludes some cost transfers between self-funded subscribers and BCBSM.

BCBSM moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), asserting that it was not acting as an ERISA fiduciary when it assessed the OTG fee. The district court dismissed the claim and the Fund appealed. On appeal, we decided that the Fund had sufficiently stated a claim for a breach of fiduciary duty under ERISA

and reversed and remanded for further proceedings.  *Pipefitters I*, 213 F. App'x at 480.

Specifically, we set forth rules for defining what constituted an ERISA fiduciary:

> Under ERISA, a third-party administrator such as BCBSM is deemed a fiduciary to the extent that it exercises "discretionary authority or discretionary control respecting management of [a] plan or . . . any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). . . .

> ERISA defines "fiduciary" in functional terms with regard to each action in question. See *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001). . . .   ERISA "does not describe fiduciaries simply as administrators of the plan," but evaluates the fiduciary role "to the extent that [an administrator] acts in such a capacity in relation to the plan." [*Pegram v. Herdrich*, 530 U.S. 211, 225 (2000)] (quotation marks and citation omitted).

> . . . .

> Under ERISA, fiduciary duties arise where an administrator exerts "any authority or control respecting management or disposition of [a fund's] assets." [29 U.S.C.] § 1002(21)(A). An administrator is deemed a fiduciary when it exercises " 'practical control over an ERISA plan's money.' " [*Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006)] (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997)). The administrator's "disposition of funds held in an account over which it exerted control makes it a fiduciary to the extent that it exercised such control." *Id.* at 490. Discretion in the disposition of plan assets is not required; it is "irrelevant whether [the administrator] exercised 'discretion' . . . . '[A]ny authority or control' is enough." *Chao v. Day*, 436 F.3d 234, 236 (D.C. Cir. 2006).

> A fiduciary relationship does not exist, however, where an administrator "performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits." *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991). Fiduciary authority must amount to more than "mere possession, or custody over the plan['s] assets." *Briscoe*, 444 F.3d at 494 (quotations omitted). In addition, fiduciary status under ERISA does not apply where "parties enter into a contract term at arm's length and where the term confers on one party the . . . right to retain funds as compensation for services rendered with respect to an ERISA plan." *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003). Fiduciary status does not extend to an administrator that

> exercised authority solely over funds that "belonged to [itself] and not to the plan." *Id.* at 618.

*Id.* at 476-77 (some alterations in original) (footnote omitted). We then found that the Fund's complaint stated a viable claim as to BCBSM's assessment of the OTG fee such that dismissal of the complaint was inappropriate:

> The Fund's complaint sets forth allegations that BCBSM's role in assessing the OTG subsidy fee was an exercise of authority and control over the fund assets, and was not merely ministerial or contractual in nature. The complaint alleges that the monetary assets at issue were "entrusted" to BCBSM, which administered them within its authority as "a fiduciary under ERISA." The complaint further states that BCBSM "improperly imposed an OTG subsidy on these funds," and that it "imposed the fee ... claiming it was a mandatory fee." The complaint alleges that "[t]he ASC contracts prohibit the OTG subsidy . . . . [and] BCBSM was not legally required to assess this OTG fee." According to the complaint, BCBSM "selectively elected to assess [the] OTG fee," and "in its discretion indicated it would unilaterally stop charging the OTG subsidy [on January 1, 2004]."
>
> . . . .
>
> In sum, the Fund has alleged in its complaint and attached documents that it entrusted BCBSM with the authority to control and disburse fund assets, and that BCBSM exercised such authority by allocating a portion of the money to itself in the form of the OTG subsidy fee and by failing to disclose this allotment to the Fund. The Fund's complaint also alleges that BCBSM's unilateral decision to discontinue imposing the fee further demonstrates BCBSM's control and authority over the assets' disposition. Therefore, the Fund has set forth sufficient allegations that BCBSM owed a fiduciary duty under ERISA with regard to its disposal of these assets, and that BCBSM breached its duty by imposing and failing to disclose the fee. . . .

*Id.* at 477 (alterations in original) (citations omitted).

In 2008, on remand in the district court, the Fund moved for certification of a class action of "members of a putative class that consists of all similarly situated self-insured employee health and welfare plans / 'groups' / 'groups' [sic] which contract with BCBSM pursuant to an ASC to provide administrative services for the plans / 'groups'

and which were improperly assessed the cost transfer / OTG subsidy." The Fund's motion did not state the precise questions it wished to be certified, however.

The district court referred the motion for class certification to Magistrate Judge Donald A. Scheer, who conducted a hearing and issued a detailed, thirty-three page Report & Recommendation ("R&R") on February 13, 2009. The magistrate judge considered the Federal Rule of Civil Procedure 23(a) prerequisites for class certification. *See* Fed. R. Civ. P. 23(a) (2009) (identifying four prerequisites for certification: numerosity, commonality, typicality, and adequacy of representation). The magistrate judge found the numerosity requirement met because the "she[e]r number of potential plaintiff class members," estimated at between 550 and 875, "is such that individual actions would be a substantial burden on the courts." He determined commonality was satisfied because:

> [A]ll members of the proposed OTG class share the common facts that their Administrative Service Contracts (ASC) included a transfer subsidy provision, and that each were charged the OTG/cost transfer subsidy. A question of law common to each member of the proposed class is whether the uniform assessment contravened Michigan's statutory law. . . .
>
> . . . .
>
> . . . Even if the language of the several contracts varied, it is a common, undisputed fact that each imposed the OTG. The central legal claim in the case is that *any* contract language authorizing the OTG is contrary to a specific and generally applicable statutory prohibition. . . .

The magistrate judge found typicality on the basis that "the imposition of the subsidy upon the great majority of ASC clients represents a single course of conduct that gives rise to the claims of all class members based on the same legal theory (i.e. that the Michigan statute prohibits the OTG)." Finally, he found the Fund met the adequacy of representation requirement because it has an interest in "[t]he central issue in the case[,] . . . the legality of assessing the OTG against BCBSM's self insured ASC clients," and lacked any individual interests "antagonistic to those of the proposed OTG class members."

Next the magistrate judge considered the requirements of Federal Rule of Civil Procedure 23(b), which identifies the types of class actions that may be maintained if the prerequisites are satisfied. *See* Fed. R. Civ. P. 23(b). The magistrate judge first considered certification under Rule 23(b)(1)(A). Rule 23(b)(1)(A) allows a class action when "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class." Here, the magistrate concluded that the "possible precedential value of individual actions" or "[t]he fact that some class members might receive damages, while other class members would not, does not justify certification under th[e] subsection," because "different results in separate actions" would not impair BCBSM's "ability to pursue a uniform continuing course of conduct."[2]

The magistrate likewise rejected certification under Rule 23(b)(3). Rule 23(b)(3) allows certification if "questions of law or fact common to the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The magistrate judge agreed with BCBSM's assertion that "its [fiduciary] status is a crucial disputed threshold factual issue specific to [the Fund], and not predominant over individual issues regarding its status as to its other ASC clients" and concluded that questions common to the class did not predominate. And because the "court would be obliged to make so many individualized determinations as to proposed class members" to determine ERISA fiduciary status, the magistrate judge also concluded that a class action was not a superior form of adjudication. Furthermore, he observed that individual class members "have the ability and incentive to pursue their own claims."

Both BCBSM and the Fund filed objections to the R&R.

---

[2]The magistrate judge considered and rejected certification under Rule 23(b)(1)(B) and Rule 23(b)(2). *See* Fed. R. Civ. P. 23(b)(1)(B) (allowing certification when "adjudications with respect to individual class members . . . would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or imped their ability to protect their interests") and Fed. R. Civ. P. 23(b)(2) (allowing a class action when "the party opposing the class has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"). As these provisions are not at issue in this appeal, the magistrate judge's analysis is omitted here.

In the meantime, the parties filed cross motions for summary judgment. Both parties addressed in relevant part whether (1) BCBSM acted as an ERISA fiduciary when it assessed the OTG subsidy fee and (2) whether Michigan law authorized BCBSM to collect the subsidy.

BCBSM argued it was expressly authorized to impose the OTG subsidy under Michigan law pursuant to Mich. Comp. Laws § 550.1609(5), which states:

> Except for identified cost transfers, each line of business, over time, shall be self-sustaining. However, there may be cost transfers for the benefit of senior citizens and group conversion subscribers. Cost transfers for the benefit of senior citizens, in the aggregate, annually shall not exceed 1% of the [annual] earned subscription income of the health care corporation . . . .

BCBSM also explained that Michigan's Insurance Commissioner had ruled in 1992 that BCBSM is obligated "to pursue the collection of" the OTG fee from all its customers, including its self-insured customers operating pursuant to an ASC. In contrast, BCBSM contended that Mich. Comp. Laws § 550.1211, the statutory provision relied on by the Fund, does not expressly prohibit assessing the OTG subsidy to ASC customers, but merely prohibits ASC customers from receiving a subsidy from other lines of business.

The Fund countered that BCBSM breached its fiduciary duty because the OTG assessment violates Mich. Comp. Laws § 550.1211, which states:

> Relative to actual administrative costs, fees for administrative services only and cost-plus arrangements shall be set in a manner that precludes cost transfers between subscribers subject to these arrangements and other subscribers of the health care corporation.

The Fund also explained that Mich. Comp. Laws § 550.1609(5) merely sets forth the general requirement that each of BCBSM's insured customers must be self-sustaining and does not authorize the imposition of the OTG fee. To the extent the two provisions contradict, the Fund asserted that the court must give more weight to § 550.1211 because it specifically addresses self-insured customers, while § 550.1609(5) is just a general statement of authority. Finally, the Fund maintained that the Insurance Commissioner's

opinion did not order BCBSM to charge self-funded clients the OTG; it "merely suggest[ed] Blue Cross 'to pursue the collection' of the cost transfers."

On September 1, 2009, the district court held a hearing on the parties' competing motions for summary judgment and their objections to the R&R on class certification. At the hearing BCBSM and the Fund reiterated their respective positions: BCBSM argued it was not a fiduciary when it assessed the OTG and that the OTG assessment did not violate Michigan law; the Fund argued BCBSM was a fiduciary when it assessed the fee and that the assessment violated Michigan law. The Fund explained that whether the OTG assessment violated Michigan law was the essence of its OTG claim and the question for which it sought certification.

The district court addressed the summary judgment motions first. It held that BCBSM was acting as an ERISA fiduciary when it assessed the OTG fee to the Fund:

> I find that [BCBSM], in fact, exercised authority or control over the Plan assets, and under ERISA it was a fiduciary. That's because the [Fund] had to advance funds to [BCBSM], which then paid the claims on the [Fund]'s behalf to the providers. Sometimes, as it has been mentioned here, [BCBSM] had to pay more than was advanced, but [the Fund] was responsible for making up the difference, which is an inherent nature of self-insuring arrangement.
>
> . . . .
>
> This shows that [BCBSM] exercised control over Plan assets, and there's really no factual dispute about this. The [Fund]'s knowledge of the OTG fee is not relevant or material to the question of whether [BCBSM] exercised control over the assets.
>
> Accordingly, [BCBSM] was a fiduciary in assessing the OTG fee.

R.E. 145 at 68-69.

To determine whether BCBSM breached its ERISA fiduciary duty to the Fund, the district court decided whether imposing the OTG violated Michigan law:

> The next question – and this is the heart of the matter, I think – is whether Blue Cross breached its fiduciary duty by assessing the fee.

Plaintiff cites MCL 550.1211(2), which can be summarized that there cannot be cost transfers between self-insurers and policyholders.

Blue Cross cites another statute, which is MCL Section 550.1609(5), which says that each line of business should be self-sustaining except for identified cost transfers. And one of the identified cost transfers in the statute is for senior citizens.

However, the Funds' provision cited more specifically addresses whether self-insurers can be assessed fees to subsidize policyholders and more specifically relates to the OTG fee. Therefore, collecting OTG fees is contrary to Michigan law. I should say collecting OTG fees from self-insureds.

The statute cited by Blue Cross is more general. The most reasonable way to reconcile the two provisions is to apply the statute as cited by Defendant, to policyholder.

Furthermore, the Fund's provision doesn't identify any cost transfers that are allowed.

The argument that Blue Cross makes that the Insurance Commissioner's ruling required the Fund to pay the OTG is not consistent with the fact that Blue Cross didn't levy the fee uniformly. And there is deposition testimony that says so, which really is inconsistent with the Defendant's argument that it was required to assess the OTG fee.

*Id.* at 69-70. The district court therefore concluded that BCBSM had breached its fiduciary duty:

Since the assessment of the fee was contrary to law and Blue Cross did not act uniformly in assessing or not assessing a fee, this shows a failure to exercise a duty of care, which is the hallmark of fiduciaries. Therefore, there was a breach of fiduciary duty.

*Id.* at 70-71.

Finally, the district court granted summary judgment to BCBSM on the Fund's claim that BCBSM breached its fiduciary duty by failing to disclose the imposition of the OTG:

As I've referred to during the argument and a moment ago, the [Fund]'s claim, that Blue Cross's failure to disclose a collection of the

> OTG fee was a breach, loses. That is, Defendant Blue Cross gets summary judgment because the Plaintiff Funds knew of the fee. The Administrative Services Contract said so.

*Id.* at 71.

Thereafter, the district court ruled on the Fund's motion for class certification. It first considered whether the class satisfied the four Rule 23(a) prerequisites:

> First, I agree with Magistrate Judge Scheer that Rule 23(a) has been satisfied.
>
> Despite the objections, the plans are numerous. The numbers have been given anywhere from 550 to 875.
>
> The ability of the other ASC customers bringing individual action is part of the Rule 23(b) analysis.
>
> Commonality is also satisfied. First, *whether the OTG fee was contrary to law is a common question, one that I've already resolved and decided summary judgment motions as requested*, and included is whether Blue Cross was a fiduciary in assessing the OTG fee. It's a fairly easy thing in each case for Blue Cross to know whether its Plan collected the OTG fee in other cases.
>
> In terms of typicality, again, I agree with Magistrate Scheer, that the claims of the Representative Plaintiff is [sic] typical of the claims or the defenses of the class. The same statutory analysis that I just went through for the Pipefitters Plaintiffs would have to be done for each of the class members.
>
> As to adequacy, the Plaintiff can fairly and adequately protect the interest of the class. Pipefitters still wants damages and has the incentive to protect the interest of absent class members.

*Id.* at 74-75 (emphasis added).

The district court then addressed the Rule 23(b) provisions. It concluded that class certification was appropriate under Rule 23(b)(1)(A) because:

> The individual actions would—and this is 23(b)(1)(A). The individual actions would create the risk of inconsistent adjudication that would establish incompatible standards of conduct. That is, one court might tell

Blue Cross that it was legal to assess the fee; another court might say it wasn't, and indeed, could assess the fee again.

*Id*. at 75.  The district court also found certification appropriate under Rule 23(b)(3):

> 23(b)(3), this section requires a predominance in [sic] superiority. Common questions predominate because it's a common question whether Blue Cross controlled assets and whether the assessment was consonant with Michigan statute.
>
> . . . .
>
> While it's true that class members probably have resources to bring suit on their own and can control the case on their own, all of the cases turn on basically the same questions.  Therefore, class action is superior.

*Id.* at 77.

The district court did not issue a written opinion.  Instead, on September 3, 2009, it merely entered an order, which "for the reasons stated on the record" granted summary judgment to the Fund as to the breach of fiduciary duty claim arising out of the OTG assessment; granted summary judgment to BCBSM on the question of whether it breached its ERISA fiduciary duty by failing to disclose the assessment; and denied summary judgment to the Fund on its state-law claims on the basis of preemption.

The September 3 order also granted the Fund class certification on the OTG claim; denied the Fund class certification on its request for additional information on health care provider rates;[3] and adopted in part and rejected in part the magistrate's R&R on class certification.  The order defined the class as follows:

> All entities (1) which had or have administrative-services contracts with Blue Cross Blue Shield of Michigan and (2) which were or are assessed the other-than-group fee.

It certified the issues as:

_____

[3]As discussed in the first footnote, this request was the subject of *Pipefitters II*.

1. Whether Blue Cross was a fiduciary under ERISA with respect to the class in assessing the OTG fee.

2. Whether Blue Cross breached a fiduciary duty owed to the class by assessing the OTG fee.

On September 18, 2009, BCBSM filed a motion for reconsideration of the district court's decision to certify the class action suit. BCBSM also sought certification to the Michigan Supreme Court or in the alternative to this Circuit on the state law question of whether Michigan law authorizes or prohibits the assessment of the OTG fee. The district court denied the motion in its entirety.

BCBSM then filed this interlocutory appeal seeking review of the district court's decision to certify a class action suit.

## II. ANALYSIS

BCBSM argues that the district court abused its discretion in certifying the class because the overarching issue is whether BCBSM was an ERISA fiduciary at the time it collected the OTG subsidy from each of the ASC customers. BCBSM asserts that this issue is inappropriate for a class action because establishing class-wide liability will require individualized inquiries into the terms of each ASC and the particular funding arrangements with each ASC customer to determine whether BCBSM actually controls "plan assets" so as to qualify as an ERISA fiduciary. The Fund counters that whether the OTG assessment contravenes Michigan law is the "common nucleus" of this case that serves to satisfy the Rule 23(a), Rule 23(b)(1)(3), and Rule 23(b)(3) requirements. The Michigan Commissioner of the Office of Financial and Insurance Regulation has filed an *amicus* brief opposing certification because of the potential for significant, negative financial ramifications to Michigan's senior citizens.

### A. Jurisdiction

We have jurisdiction to hear this case pursuant to Federal Rule of Civil Procedure 23(f), which provides appellate courts with discretion to hear an interlocutory appeal from an order granting or denying class certification. Fed. R. Civ. P. 23(f)

(2009); *Reeb v. Ohio Dep't of Rehab. & Corr.* (*Reeb III*), 435 F.3d 639, 643 (6th Cir. 2006).

### B. Standards of Review

We review the certification of a class action for an abuse of discretion. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007). An abuse of discretion occurs "when the district court relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Reeb III*, 435 F.3d at 644.

In addition, both the Supreme Court and this Circuit require that a district court conduct a "rigorous analysis" of the Rule 23(a) requirements before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). The "rigorous analysis" requirement is critical because it ensures that each of the prerequisites for certification have actually been satisfied. 6A Federal Procedure, Lawyers Edition § 12:267 (2011). Thus, satisfying Rule 23(a) requires something more than mere repetition of the rule's language; "'[t]here must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

The district court's ruling does not meet this standard. As the magistrate judge noted in his written opinion, despite common issues, the issues actually certified would require individualized attention under the principles we laid out in *Pipefitters I*. *See In re Am. Med. Sys.*, 75 F.3d at 1081 (finding that individual proofs, which "vary from plaintiff to plaintiff," do not satisfy Rule 23(a) and that the failure to recognize the proofs' individualized nature "highlight[ed] the error of the district judge" in certifying the class). The district court has in fact already decided the common question on summary judgment. *See Sprague*, 133 F.3d at 397-98 (rejecting a Rule 23(a) finding when the common questions were decided prior to certification, leaving only inquiries into the individual agreements between the defendant and each class member). As a

result, there is no common contention capable of classwide resolution such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. — , 131 S. Ct. 2541, 2551 (2011).

Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required. *Cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. —, 131 S.Ct. 1740, 1751 (2011) (explaining that switching from individual arbitration to arbitration on a class wide basis "makes the process slower, more costly, and more likely to generate procedural morass"). Hence the need for a "rigorous analysis" by the district court as to all the requirements of Rule 23. The absence of analysis by the district court in this case resulted in reversible error. *See In re Am. Med. Sys.*, 75 F.3d at 1082 (finding error when the district judge "gave no serious consideration to [Rule 23(a)], but simply mimicked the language of the rule").

Normally we would reverse and remand for the failure to conduct a rigorous analysis. *See, e.g.*, *Reeb v. Ohio Dep't of Rehab. & Corr.* (*Reeb II*), 81 F. App'x 550, 559 (6th Cir. 2003). However, because the record is clear that a class action is not a superior method of adjudication, we reverse the district court's certification for the reasons discussed below.

### C. Superiority

Federal Rule of Civil Procedure 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[4] The rule is designed

---

[4] The rule itself lists a non-exhaustive list of factors as "pertinent" to a 23(b)(3) analysis:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

to "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes).

To determine whether a class action is the superior method for fair and efficient adjudication, the district court should consider the difficulties of managing a class action. *Beattie*, 511 F.3d at 567. The district court should also compare other means of disposing of the suit to determine if a class action "is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1779 (3d ed. 2010); *see also* 2 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 4:27 (4th ed. 2010) (identifying possible alternatives to the class action device such as "joinder, intervention, consolidation, a test case, and an administrative proceeding"). Additionally, the court should consider the value of individual damage awards, as small awards weigh in favor of class suits. *Beattie*, 511 F.3d at 567; *see also Amchem*, 521 U.S. at 616 (explaining that when individual class members have large stakes in the outcome and the ability to pursue a remedy alone, their individual interests weigh against a Rule 23(b)(3) action).

The magistrate judge recognized that all the class members shared the common facts that their ASCs included a transfer subsidy provision and that each were charged an OTG subsidy and therefore shared the "central legal claim" that any contract authorizing an OTG subsidy violates Mich. Comp. Laws § 550.1211. Notwithstanding this commonality, the magistrate judge also recognized that prior to determining this "central legal claim," BCBSM's ERISA fiduciary status is a "crucial . . . threshold factual issue specific to" each and every class member, requiring the court "to make so many individualized determinations as to proposed class members" in order to determine

---

Fed. R. Civ. Pro. 23(b)(3)(A) – 23(b)(3)(D) (2009).

ERISA fiduciary status, such that a class action could not be a superior form of adjudication.

The district court, on the other hand, based its 23(b)(3) determination on the "central legal claim" of whether the OTG is prohibited by Michigan statute, ignoring the critical, factual threshold issue specific to each and every class member of whether BCBSM was acting as an ERISA fiduciary in each individual, contractual relationship with each plan member when it imposed the OTG fee.[5] As we explained in our opinion on remand, determining whether an administrator is a fiduciary with respect to a particular action requires a functional analysis to determine if the administrator exerted any authority or control over a fund's assets when it took the action in question. *See Pipefitters I*, 213 F. App'x at 476. Thus, the district court here would be required to conduct individualized inquiries into the ASC terms and funding arrangements of each ASC customer. That means looking at the contract terms and funding arrangements of 550 to 875 class members. Given the necessary number of individual inquiries, a class action cannot be a superior form of adjudication.[6] *Cf. Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) (finding that class litigation is superior when a threshold issue of contract interpretation applies equally to the whole class).

Ironically, the district court ruled on the only issue that was truly "common" and certified the questions that require individualized contract-by-contract assessment. Had the district court compared a class action with other methods of resolving the dispute, it would or should have realized that—because it had in fact decided the only claim common to all members of the class, as well as the threshold legal issue in the individual action of whether BCBSM was an ERISA fiduciary—it would have been more judicially

---

[5] Absent this determination, there is no ERISA claim and, consequently, no federal subject matter jurisdiction.

[6] On appeal, the Fund claims BCBSM waived any argument over individualized inquiries by failing to raise it in a timely fashion before the district court. Clearly, the question of individualized inquiries has been central to the case throughout the course of this litigation, as evidenced by the discussion in *Pipefitters I* on the individualized, action by action, analysis required to determine fiduciary status and the magistrate judge's discussion of individualized inquires in the Rule 23(b)(3) superiority context. The Fund mischaracterizes the record. No waiver occurred.

efficient to enter a final judgment in the individual action so as to allow BCBSM to file an appeal. In this way, the central legal issue could have been resolved by this court, and based on that outcome, other potential class members could then decide whether to pursue an individual suit against BCBSM depending on the legality of the OTG subsidy and the individual contractual relationship each class member has with BCBSM.

This course of action would also have mitigated the Commissioner's concerns about the impact of this case. The Commissioner asserts that Mich. Comp. Laws § 550.1609(5) allows BCBSM to assess the OTG to its self-insured customers and explains that the revenue generated from assessing the fee to both insured and self-insured customers helps ensure continued coverage of Michigan's senior citizens under Medigap.[7] In fact, according to the Commissioner, nearly two thirds of the funding for BCBSM's Medigap subsidy comes from subsidies paid by self-insured, ASC customers like the Fund. The Commissioner contends that, as a result, if the case were to proceed as a class action, BCBSM would potentially be forced to stop collecting more than $100 million dollars annually, which could result in higher premium rates for insured customers or in a reduction in Medigap coverage and a dramatic increase in premium rates for Michigan's senior citizens. The serious financial repercussions to Michigan's elderly population further support a conclusion that a class action is not a superior method of resolving the Fund's allegation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974) (explaining that a court ought to consider superiority from many viewpoints, including that "of the public at large"). The public's interest would also be better served by allowing the individual suit between the Fund and BCBSM to proceed to this court for appellate review. This would expedite the ability of this court to hear and decide the "common issue," the resolution of which will clarify BCBSM's continued ability to fund the Medigap subsidy and provide ASC customers information useful to future interactions with BCBSM relative to the OTG.

---

[7]In June 2010, the Commissioner attempted to intervene in the district court to address the legality of assessing the OTG to self-funded customers under Michigan law. The district court denied the Commissioner's motion as untimely.

Finally, the potential damage awards do not support a finding of superiority. The Fund alone claimed damages in excess of $280,000, and the record indicates that the possible awards of other class members exceed this amount. These are not the types of awards that would preclude individual class members from seeking relief through litigation. *Cf. Beattie*, 511 F.3d at 567 (holding that possible recovery of roughly $124.68 per class member was too small to encourage individuals to bring suit, thereby making a class action a superior method of adjudicating the dispute).

For these reasons, the district court's determination that "all of the cases turn on basically the same questions" is incorrect and inconsistent with the principles of ERISA. Nor does it support a finding of superiority. Because Rule 23(b)(3) requires both predominance and superiority, and the Fund cannot show superiority, we need not review the district court's findings on predominance to conclude that certification under Rule 23(b)(3) was an abuse of its discretion. We reverse the class certification under Rule 23(b)(3).

### D. Incompatible Standards of Conduct

The district court also certified the action under Rule 23(b)(1)(A), so we briefly address this alternative ground. Rule 23(b)(1)(A) allows for class certification when "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." A class action is appropriate under this subsection when "the party is obliged by law to treat the members of the class alike," for example when the class touches upon how a utility company interacts with its customers or how the government imposes a tax. *See Amchem*, 521 U.S. at 614 (citation omitted). Certification is not appropriate simply because "some plaintiffs may be successful in their suits against a defendant while others may not." *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) (citations omitted); *see also* 7AA Wright, Miller, & Kane, *supra*, § 1773 (3d ed. 2010) (explaining that the rule "requires more than a risk that separate judgments would oblige

the opposing party to pay damages to some class members and not to others or to pay them different amounts").

The district court's analysis does not explain how the class questions present the risk required under this subsection and instead, focuses again on the question of legality under state law. As the magistrate judge correctly recognized in rejecting Rule 23(b)(1)(A) certification, there is nothing to indicate that adjudication in separate actions would impair BCBSM's ability to pursue a uniform course of conduct. Because the threshold question of BCBSM's fiduciary status depends on the ASC and funding arrangements between each class member and BCBSM, there is no prospect that individual adjudications would subject BCBSM to conflicting affirmative duties. In other words, the fact that the district court found BCBSM liable to the Fund for a fiduciary breach, while another court might find BCBSM owes no duty to a different ASC client, does not create the risk required under this subsection. Furthermore, even if different courts reached different conclusions about the legality of the OTG subsidy, those decisions do not compel affirmative action by BCBSM and thus, would not impair its ability to pursue a uniform continuing course of conduct.

Although the district court correctly identified the legal standard for a Rule 23(b)(1)(A) class, it abused its discretion by failing to explain how the proposed class creates the required risk of incompatible standards of conduct. Class certification was not appropriate under Rule 23(b)(1)(A).

### III. CONCLUSION

Because a class action is not warranted under Rule 23(b)(3) or Rule (b)(1)(A) we **REVERSE** the class certification with prejudice and **REMAND** to the district court for an order of final judgment in the Fund's individual action.

---

**DISSENTING IN PART**

---

CLAY, Circuit Judge, dissenting in part.  Defendant Blue Cross Blue Shield of Michigan appeals the district court's decision certifying a class of plaintiffs pursuant to Federal Rules of Civil Procedure 23(b)(1)(A) and (b)(3), with Plaintiffs, Pipefitters Local 636 Insurance Fund, and its trustees (collectively "Plaintiffs"), serving as lead plaintiffs.  The majority reverses the district court, and decertifies the class under both Rule 23 sub-sections.  I agree with the majority's disposition and analysis of the district court's certification under Rule 23(b)(1)(A).  However, I disagree with the majority's treatment of certification under Rule 23(b)(3).

The district court failed to perform the required "rigorous analysis" in considering Plaintiffs' certification motion.  *See Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000).  The record in this case is under-developed, and does not reveal the extent to which individualized inquiry into each class member's contract will be necessary to adjudicate the class' claims against Defendant.  Consequently, the case should be remanded to the district court for further factual development regarding certification under Rule 23(b)(3).

**BACKGROUND**

 In 2002, Plaintiffs converted from an insured customer of Defendant to a self-funded plan, and entered into an Administrative Services Contract ("ASC") with Defendant.  As a self-funded plan, Plaintiffs covered its customers' health care costs, and under the ASC, Defendant's role became exclusively administrative.  Defendant processed and paid the amounts billed for enrollees' health care claims, and Plaintiffs reimbursed Defendant for the amounts paid.

Pursuant to the ASC, Plaintiffs also paid Defendant an administrative charge per participant, and Defendant retained a portion of Plaintiffs' assets as additional fees.  From June 2002 through January 2004, one of these fees was an other-than-group

("OTG") subsidy. The OTG subsidy is a Medigap subsidy that Defendant collected from its insured and self-insured customers to lower the cost of Medigap coverage for Michigan senior citizens. In January 2004, Defendant unilaterally stopped charging Plaintiffs the OTG fee.

In September 2004, Plaintiffs filed the instant action alleging that Defendant breached its fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-461, by charging Plaintiffs the OTG fee between June 2002 and January 2004, and for failing to disclose the fee. The district court initially dismissed this element of Plaintiffs' complaint for failure to state a claim. *See Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 213 F. App'x 473, 475 (6th Cir. 2007) ("*Pipefitters I*"). Plaintiffs appealed, and in *Pipefitters I*, this Court reversed, finding that Plaintiffs had sufficiently alleged in its complaint that Defendant breached an ERISA fiduciary duty in charging the OTG fee. *See id.* at 478.

On remand, Plaintiffs filed a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, requesting that the district court certify a class of self-insured health benefits plans that "contracted with BCBSM to provide administrative services and which were improperly assessed the cost transfer subsidy/OTG." (R. 74, Pls. Mot. for Class Certification at 20.) Because Plaintiffs allege that Defendant breached its ERISA fiduciary duty in charging class members the OTG fee, in order to prevail on their claims, each class member must demonstrate that Defendant acted in its ERISA fiduciary capacity in charging it the OTG fee.

Nevertheless, without this information, the district court granted Plaintiffs' certification motion, concluding that Plaintiffs satisfied the requirements of Rule 23(a), and 23(b)(3). The district court defined the class as follows: "All entities (1) which had or have administrative services contracts with Blue Cross Blue Shield of Michigan and (2) which were or are assessed the other-than-group fee." (R. 127, Order Granting in part and Denying in Part Pls. Mot. for Class Certification at 2.) The district court also certified two issues for class-wide determination: "(1) Whether Blue Cross was a

fiduciary under ERISA with respect to the class in assessing the OTG fee; (2) Whether Blue Cross breached a fiduciary duty owed the class by assessing the OTG fee." (*Id*.) Defendant now appeals the district court's certification of the class.

## ANALYSIS

Determining whether Defendant violated ERISA by charging Plaintiffs and the class members the OTG fee requires that we ascertain, among other things, whether Defendant acted in its ERISA fiduciary capacity in charging the fee. The majority finds that class certification is inappropriate in this case because in order to establish Defendant's ERISA fiduciary status as to each member of the class, "the district court here would be required to conduct individualized inquiries into the . . . terms and funding arrangements of each" class member. (Maj. Op. at 17.) The majority finds that these individual inquiries would overwhelm the inquiries common to the class members, making class certification inappropriate.

The party seeking class certification bears the burden of proof regarding the Rule 23 certification requirements. *See, e.g.*, *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Nonetheless, in assessing the propriety of class certification, the district court has an independent duty to conduct a "rigorous analysis" to determine whether the party seeking certification has satisfied that burden. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Stout*, 228 F.3d at 716. This Court has remanded class actions for further proceedings when the district court failed to conduct this requisite "rigorous analysis." *See, e.g.*, *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 F. App'x 550, 559 (6th Cir 2003).

Unfortunately, the district court in this case did not issue a written opinion on the class certification question. Instead, immediately prior to announcing its ruling, the district court explained: "I'm ready to rule. And one of the reasons I wanted you to come back at 1:30 [from a recess] was so that my law clerk and I could sort of discuss this and try to make a ruling that is useful to you in terms of reviewing it without writing an opinion." (R. 145, Tr. of Mot. for Summ. J. and Mot. on Class Certification at 68.)

The district court's analysis of the Rule 23 factors required for class certification spanned only two pages of the hearing transcript. (*See id*. at 74-76.) Explaining its decision to certify the class, the district court stated as follows:

> First I agree . . . that Rule 23(a) has been satisfied. Despite the objections, the plans are numerous. The numbers have been given anywhere from 550 to 875.
>
> The ability of the other [class members] is also part of the Rule 23(b) analysis.
>
> Commonality is also satisfied. First, whether the OTG fee was contrary to law is a common question. One that I've already resolved and decided summary judgment motions as requested, and included is whether Blue Cross was a fiduciary in assessing the OTG fee. It's a fairly easy thing in each case for Blue Cross to know whether its Plan collected the OTG fee in other cases.
>
> In terms of typicality . . . the claims of the Representative Plaintiff [are] typical of the claims or the defenses of the class. The same statutory analysis that I just went through for the Pipefitters Plaintiffs would have to be done for each of the class members.
>
> As to adequacy, the Plaintiff can fairly and adequately protect the interests of the class. Pipefitters still wants damages and has the incentive to protect the interest of absent class members.
>
> In terms of Rule 23(b), if any of the three subcomponents are satisfied, then Plaintiff is entitled to certification . . . .
>
> 23(B)(3), this section requires a predominance in superiority [sic]. Common questions predominate because it's a common question whether Blue Cross controlled assets and whether the assessment was consonant with [the] Michigan statute.
>
> And . . . this class action has to be superior to the individual actions.
>
> While it's true that class members probably have resources to bring suit on their own and can control the case on their own, all of the cases basically turn on the same questions. Therefore class action is superior.

(*Id*.)

Rule 23 requires that a district court engage in "a thorough evaluation of the Rule 23 factors" prior to determining whether to certify a class. *Landman & Funk PC v.*

*Skinner-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011). Although "district courts may not inquire into the merits of the class representatives' underlying claims," *Reeb* 81 F. App'x at 555, district courts must nevertheless consider the factual particularities of the claims in determining whether class certification is appropriate. *See id.*; *Landman*, 640 F.3d at 93 ("To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a rigorous analysis. In doing so, a court may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." (internal quotations and citations omitted)). Depending on the claims at issue, the district court's rigorous analysis may include "an examination of what the parties would be required to prove at trial." *Cox v. Zurn Pex, Inc.*, No. 10-2267, 2011 U.S. App. LEXIS 12663, at *11 (8th Cir. July 6, 2011) (internal quotation marks omitted).

In its certification inquiry in the instant case, the district court did not discuss the particularities of the class' claims against Defendant to elucidate what pieces of evidence would be necessary to prove class members' claims, and the extent to which this evidence would require individualized inquiries. The district court's failure to develop and analyze the record impedes our ability to thoroughly review whether the district court's certification of the class was an abuse of discretion.

It may very well be, as the majority assumes, that substantial individualized inquiry into each class member's contract would be necessary to dispose of the claims against Defendant if, for example, each class member negotiated a separate contract with Defendant, containing dissimilar provisions. However, Defendant may also have a form contract common to all or most of the class members, in which case minimal individualized inquiry would be necessary, and class certification might be appropriate. *See Pipefitters I*, 213 F. App'x at 475 (explaining that Defendant used the same accounting and billing procedure consistently throughout its business dealings with all of its self-insured clients). Because the record is devoid of certain essential facts, we simply have no way of knowing the extent to which individualized inquiry is necessary to adjudicate class members' claims. Without this information, it is impossible for us

to conclude whether the class is sufficiently cohesive to permit a class-wide determination.

The district court failed to perform the required "rigorous analysis," and the record is thus under-developed, and does not reveal the extent to which individualized inquiry into each class member's contract would be necessary to determine whether Defendant acted in its ERISA fiduciary capacity as to each class member in collecting the OTG fee. Therefore, remand of the class certification question is appropriate. *See, e.g.*, *Reeb*, 81 F. App'x at 559.

## CONCLUSION

For the foregoing reasons, I respectfully dissent in part.