NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0043n.06
Filed: January 17, 2007

**05-2580**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PIPEFITTERS LOCAL 636, Trustees of Pipefitters Local 636 Insurance Fund; JOHN R. GREEN; CHARLES INMAN; JOHN O'NEIL; GREG SIEVERT; E. THOMAS DEVLIN; GERALD HOOVER, | ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| BLUE CROSS & BLUE SHIELD OF MICHIGAN, | ) ) ) ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY and COLE, Circuit Judges, and RESTANI,[*] Judge.

**RESTANI, Judge.** Plaintiffs-Appellants Pipefitters Local 636 Insurance Fund, et al. ("Fund") appeal from a judgment of the United States District Court for the Eastern District of Michigan. The district court granted a motion to dismiss in favor of Defendant-Appellee Blue Cross & Blue Shield of Michigan ("BCBSM") on federal claims of breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, et al., and related claims under Michigan law. The motion to dismiss was granted on the grounds that the complaint did not state adequate claims that BCBSM acted as a fiduciary under ERISA with

_____

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

regard to the actions in question.

On appeal, the Fund argues that BCBSM acted as an ERISA fiduciary with respect to its use of fund assets to pay for an "Other Than Group" ("OTG") subsidy and its refusal to provide claims-related records as requested by the Fund. The district court granted BCBSM's motion to dismiss, holding that the dispute concerns contractual duties under state law rather than fiduciary duties under ERISA.

For the reasons that follow, we conclude that the Fund's complaint sets forth sufficient allegations that BCBSM was acting as a fiduciary in control of fund assets when it assessed and failed to disclose the OTG subsidy fees. As to BCBSM's refusal to release requested claims-related information, however, we conclude that the Fund's complaint does not set forth sufficient allegations to establish a separate basis for fiduciary liability under ERISA. Accordingly, we reverse in part and remand to the district court to further consider BCBSM's status as a fiduciary with respect to the OTG subsidy fee. We affirm the district court's dismissal of the Fund's claims arising from BCBSM's refusal to release the requested claims-related information.

## FACTUAL AND PROCEDURAL BACKGROUND

The Appellant is a multiemployer trust fund[1] administered pursuant to ERISA[2] and the Labor

---

[1]The complaint states that the Fund intends to pursue class status on behalf of other similarly situated funds. The district court properly considered a motion to dismiss prior to considering class certification. *See Heckler v. Ringer*, 466 U.S. 602, 610 n.5 (1984).

[2]ERISA defines applicable employee welfare benefits plans to include "any plan, fund, or program which . . . [is] maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or

(continued...)

Management Relations Act, 29 U.S.C. § 186, for the purpose of providing health and welfare benefits to its participants and beneficiaries. For several years, the Fund was an insured group customer of BCBSM, purchasing insurance coverage by paying premiums. The Fund converted in June 2002 to a self-funded plan, providing benefits by using fund assets. At that time, the Fund entered into an Administrative Services Contract ("ASC") with BCBSM for services including: claims processing; financial management and reporting; negotiation of participating provider agreements; cost containment initiatives; maintenance of all necessary records; and provision of information through established audit procedures. *See* J.A. at 171–73 (ASC at 3–5).

Under the terms of the ASC, the Fund agreed to pay claims and administrative charges, including amounts billed during the year, hospital prepayments, actual administrative charges and group conversion fee, any late payment charges, statutory and/or contractual interest, and "[a]ny other amounts which are the Fund's responsibility pursuant to this Contract." *Id.* at 178 (ASC at 10). The ASC also states that "[t]he Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State Insurance Commissioner as authorized pursuant to [Michigan law] will be reflected in the hospital claims cost contained in Amounts Billed." *Id.*

From June 2002 to January 2004, BCBSM collected from the Fund an OTG fee[3] to subsidize coverage for non-group clients. The OTG subsidy was regularly collected from BCBSM's group

---

[2](...continued)
otherwise . . . medical, surgical, or hospital care or benefits." 29 U.S.C. § 1002(1). ERISA also covers employee pension benefit plans. *Id.* § 1002(2)(A).

[3]The parties appear to agree that the OTG subsidy is a type of "cost transfer subsidy."

clients. Self-insured clients, however, were not always required to pay the fee, and the parties dispute whether Michigan law authorized the imposition of OTG subsidy fees on such clients.[4] In January 2004, BCBSM unilaterally eliminated the OTG subsidy charge to the Fund.

The Fund alleges that BCBSM breached its fiduciary duties under ERISA by imposing the OTG subsidy from June 2002 to January 2004, and by failing to disclose the fee in its quarterly statements. The Fund also alleges that BCBSM improperly refused to provide claims-related information for evaluation at the Fund's request. In district court, the Fund brought claims against BCBSM for: 1) breach of fiduciary duties under ERISA for imposing and failing to disclose the OTG subsidy fee; 2) breach of fiduciary duties under ERISA for refusing to provide claims-related information; and 3) breach of contract, negligence and misrepresentation under state law.

BCBSM moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. BCBSM argued that it was not acting as a fiduciary under ERISA when it took the actions in question. The district court granted the motion to dismiss,[5] and the Fund appeals. This court has jurisdiction over a final decision of the district court pursuant to 28 U.S.C. § 1291, and review of a district court's decision

---

[4]The Fund argues that "M.C.L. 550.1221 forbids entities such as [BCBSM] from imposing a cost transfer subsidy/OTG against administrative services clients such as the Plaintiff Fund." Appellant's Br. 8–9. BCBSM asserts that the OTG subsidy "is a charge required by the State Insurance Commissioner to help fund Medigap coverage for senior citizens." Appellee's Br. 5. Neither of these positions has been clearly established.

[5]The district court did not specify whether it granted the motion to dismiss under Rule 12(b)(1), Rule 12(b)(6), or both.

on a motion to dismiss is generally *de novo*. *See Simon v. Pfizer Inc.*, 398 F.3d 765, 772 (6th Cir. 2005).

## DISCUSSION

## I. Evaluating ERISA Fiduciary Status

Under ERISA, a third-party administrator such as BCBSM is deemed a fiduciary[6] to the extent that it exercises "discretionary authority or discretionary control respecting management of [a] plan or . . . any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). A fiduciary under ERISA is required to perform its actions with the utmost "care, skill, prudence, and diligence . . . [and] in accordance with the documents and instruments governing the plan." *Id.* § 1104(a)(1)(B)–(D).

ERISA defines "fiduciary" in functional terms with regard to each action in question. *See Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001). An ERISA fiduciary is permitted to make business decisions in its own interest, so long as it is not acting as a fiduciary at that time. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–44 (1999). When acting as a fiduciary, however, "ERISA does require . . . that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). ERISA "does not describe fiduciaries simply as administrators of the plan," but evaluates the fiduciary role "to the extent that [an administrator] acts in such a capacity in relation to the plan." *Id.* (quotation marks and citation omitted).

---

[6]ERISA defines "person" and "fiduciary" to include a corporation. *See* 29 U.S.C. § 1002(9).

In order to determine whether ERISA applies to the instant case, the threshold inquiry is whether, when taking each action in question, BCBSM exercised: 1) any authority or control over plan assets, or 2) discretionary authority over plan management. *See Briscoe v. Fine*, 444 F.3d 478, 490–91 (6th Cir. 2006).

## II. The Fund Sufficiently Alleges that BCBSM Acted as an ERISA Fiduciary With Regard to the Imposition of and Failure to Disclose the OTG Subsidy Fee

The Fund seeks relief on the claim that BCBSM breached a fiduciary duty under ERISA by using fund assets to pay the OTG subsidy fee, and by failing to disclose the fee on its quarterly statements. ERISA §§ 1132(a)(2) and 1109(a) provide a cause of action against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed . . . [for] any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). In reviewing the motion to dismiss, the question is not whether BCBSM actually breached a fiduciary duty under ERISA, but whether the plaintiff has set forth sufficient allegations that such a duty existed and that it was breached. We therefore turn to the issue of whether the Fund has sufficiently alleged that BCBSM acted as a fiduciary with respect to the OTG subsidy fee.

Under ERISA, fiduciary duties arise where an administrator exerts "any authority or control respecting management or disposition of [a fund's] assets." *Id.* § 1002(21)(A). An administrator is deemed a fiduciary when it exercises "'practical control over an ERISA plan's money.'" *Briscoe*, 444 F.3d at 494 (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997)). The administrator's "disposition of funds held in an account over which it exerted control makes it a fiduciary to the extent that it exercised such control." *Id.* at 490. Discretion in the disposition of

plan assets is not required; it is "irrelevant whether [the administrator] exercised 'discretion' . . . . '[A]ny authority or control' is enough." *Chao v. Day*, 436 F.3d 234, 236 (D.C. Cir. 2006).

A fiduciary relationship does not exist, however, where an administrator "performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits." *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991). Fiduciary authority must amount to more than "mere possession, or custody over the plan['s] assets." *Briscoe*, 444 F.3d at 494 (quotations omitted). In addition, fiduciary status under ERISA does not apply where "parties enter into a contract term at arm's length and where the term confers on one party the . . . right to retain funds as compensation for services rendered with respect to an ERISA plan." *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003). Fiduciary status does not extend to an administrator that exercised authority solely over funds that "belonged to [itself] and not to the plan." *Id.* at 618.

Therefore, in order to overcome BCBSM's motion to dismiss, the Fund must set forth sufficient allegations that BCBSM exercised any authority or control over plan assets, and that it performed more than a mere ministerial or contractually compelled function in assessing the OTG subsidy fee. *See Briscoe*, 444 F.3d at 494.

The Fund's complaint sets forth allegations that BCBSM's role in assessing the OTG subsidy fee was an exercise of authority and control over the fund assets, and was not merely ministerial or contractual in nature. The complaint alleges that the monetary assets at issue were "entrusted" to BCBSM, which administered them within its authority as "a fiduciary under ERISA." J.A. at 153–54 (Pl.'s First Am. Compl. ¶ 32, ¶ 44). The complaint further states that BCBSM "improperly

imposed an OTG subsidy on these funds," Pl.'s First Am. Compl. at ¶ 63, and that it "imposed the fee . . . claiming it was a mandatory fee." *Id.* at ¶ 42. The complaint alleges that "[t]he ASC contracts prohibit the OTG subsidy . . . . [and] BCBSM was not legally required to assess this OTG fee." *Id.* at ¶ 37, ¶ 41. According to the complaint, BCBSM "selectively elected to assess [the] OTG fee," *id.* at ¶ 33, and "in its discretion indicated it would unilaterally stop charging the OTG subsidy [on January 1, 2004]." *Id.* at ¶ 39.

In addition, the ASC attached to the complaint states that BCBSM acquired control over Fund assets by an initial transfer of funds to cover the first two quarters of projected claims and expenses, followed by monthly prepayments in accordance with BCBSM-issued quarterly statements. J.A. at 180 (ASC at 12); *see also id.* at Sched. A. The ASC authorizes BCBSM to allocate and dispose of the transferred funds while the assets are within BCBSM's control. *See id.* at 9–14. In addition, under the terms of the contract, the Fund would be unable to access the transferred funds for a period even beyond the termination of the agreement. *Id.* at 14. Both parties also acknowledge that the OTG subsidy fee was "part of the allocation of the fund's money," J.A. at 280 (Mot. to Dismiss First Am. Compl. Hr'g Tr. 15:17, Sept. 26, 2005), and that BCBSM collected the fee "by keeping a portion of the hospital discount." J.A. at 220 (Letter from Ernie Kafcas, Account Manager, BCBSM, to John M. Shoemaker, Plan Manager, JMS Administrators, Inc. (Jan. 6, 2004)).

In sum, the Fund has alleged in its complaint and attached documents that it entrusted BCBSM with the authority to control and disburse fund assets, and that BCBSM exercised such authority by allocating a portion of the money to itself in the form of the OTG subsidy fee and by

failing to disclose this allotment to the Fund. The Fund's complaint also alleges that BCBSM's

unilateral decision to discontinue imposing the fee further demonstrates BCBSM's control and

authority over the assets' disposition. Therefore, the Fund has set forth sufficient allegations that

BCBSM owed a fiduciary duty under ERISA with regard to its disposal of these assets, and that

BCBSM breached its duty by imposing and failing to disclose the fee. As in *Briscoe*, whether

BCBSM actually breached any resulting "duty that it owed [under ERISA] is a question that the

parties may address on remand." *Briscoe*, 444 F.3d at 495.

Although BCBSM asserts that this dispute is merely contractual in nature, we find that the

Fund's allegations place its OTG fee claims within the scope of ERISA. BCBSM argues that the

dispute arises solely from the ASC, and that the meaning of the provision in question should be

construed in state court. BCBSM argues specifically that the Fund must have known that the OTG

subsidy fees would be assessed because the Fund asked for a waiver of the provision allowing a

"Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the

State Insurance Commissioner." J.A. at 178 (ASC at 10). The Fund responds that the subsidy fee

could not have been included in the above provision because there is no evidence that the fee was

ordered by the State Commissioner, or even that it was permitted under Michigan law. The Fund's

knowledge of the fee, however, would not necessarily negate the exercise of control or authority by

BCBSM in its imposition because such knowledge would not alter BCBSM's control over the funds.

*See Briscoe*, 444 F.3d at 492 ("The terms of the Agreement may have limited [the administrator's]

discretion over the remaining funds, but did not affect its control over those funds. . . . [T]he

Agreement does not alter the fact that [the administrator] acted as a signatory and unilaterally

disposed of the remaining funds." (emphasis omitted)). While this contractual term is relevant to the trial court's determination of the extent of BCBSM's duties under the agreement, there is nothing at this early stage that negates the Fund's assertions set forth in the complaint. The Fund has set forth sufficient allegations that BCBSM acted as a fiduciary under ERISA with respect to the OTG fee.

**III.  The Fund Fails to Set Forth Sufficient Allegations that BCBSM Acted as an ERISA Fiduciary With Regard to its Refusal to Provide Claims-Related Information**

The Fund also asserts a claim against BCBSM on the ground that BCBSM acted as a fiduciary under ERISA by refusing to provide claims information unrelated to the OTG fee and requested outside of contractually agreed-upon audit procedures. J.A. at 156 (Pl.'s First Am. Compl. ¶¶ 50–52). When a third-party administrator exercises authority over non-monetary elements of a plan, ERISA confers fiduciary status only where the administrator exercises "discretionary authority or discretionary control." 29 U.S.C. § 1002(21)(A)(i).

As indicated previously, discretionary authority under ERISA requires more than a showing of "any authority or control" and requires the exercise of authority to make administrative decisions beyond stringent contractual or policy limitations. *See Briscoe*, 444 F.3d at 490–91. Such discretion is typically found where an administrator has the authority to make benefits determinations or construe the terms of a plan. *See Voyk v. Bhd. of Locomotive Eng'rs*, 198 F.3d 599, 604 (6th Cir. 1999); *see also Tregoning v. Am. Cmty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993). Discretionary authority does not exist where a party merely decides to adhere to an existing contract term, *see*

*Seaway*, 347 F.3d at 619, or makes business decisions on its own behalf, outside of its role as plan administrator. *See Hughes*, 525 U.S. at 443–44.

In the instant case, the Fund's complaint states only that BCBSM was "in possession of the [requested] Claims Records," J.A. at 155 (Pl.'s First Am. Compl. at ¶ 48), and that it "refused to provide access" to these records when requested. *Id.* at ¶ 51. The complaint does not specify how BCBSM was exercising discretionary authority in deciding not to release the records, and offers only the conclusion that "BCBSM is a fiduciary under ERISA." *Id.* at ¶ 47. Although the complaint clearly indicates the types of records sought, *id.* at ¶ 49, it does not allege facts to establish that BCBSM was acting as a fiduciary when it decided not to release such information.

Contrary to its own assertions regarding BCBSM's fiduciary status, the Fund's complaint acknowledges that BCBSM refused to provide the requested information in order to "retain its competitive advantage by limiting the ability of the Fund[ ] to compare its costs with alternate service providers." *Id.* at ¶ 52. BCBSM confirmed this reasoning in correspondence to the Fund, stating that "[w]e do not share provider specific charge and payment information with anyone even . . . for purposes of claim and benefit analysis. We are not required to and choose not to for legitimate business reasons and we will not do so for the particular purpose of comparing or shopping the price." J.A. at 227 (Email from Jeffrey Rumley, BCBSM, to Jacqueline Kelly (Apr. 30, 2003, 08:05:00 AM)). These statements are consistent with BCBSM's position that it was acting in a business capacity, rather than as an ERISA fiduciary, when it decided not to release the information.

In addition, the ASC provides for an established audit procedure for the disclosure and monitoring of relevant claims-related information. The ASC states that "[t]he Fund, at its own expense, shall have the right to audit Enrollee claims . . . however, audits will not occur more frequently than once every twelve (12) months and will not include claims from previously audited periods." J.A. at 174 (ASC at 6). The agreement requires that the Fund provide sixty to ninety days notice of its intent to pursue an audit, and that "[p]rior to any audit, the Fund and BCBSM must mutually agree upon any independent third party auditor . . . to perform the audit." ASC at 7. The case relied upon by the Fund to show a fiduciary obligation to release accounting information on demand is distinguishable from the current dispute, as in that case the applicable agreement was "silent on the right to an audit." *Libbey-Owens-Ford Co. v. Blue Cross and Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993). It is not clear why the Fund sought the claims information at issue outside of the agreed-upon audit procedure; the complaint states only that the Fund "need[s] access to the Claims Records to . . . properly monitor costs." J.A. at 156 (Pl.'s First Am. Compl. at ¶ 50). As mentioned previously, discretionary authority does not arise where a party was simply adhering to a bargained-for contractual provision; in such a case, a claim for breach of fiduciary duty under ERISA would not lie. *See Seaway*, 347 F.3d 619.

In this case, the Fund's complaint and supporting documents indicate that BCBSM was simply adhering to the contractually agreed-upon audit procedures in refusing to release the information, and that it decided not to release the requested documents in its own business capacity rather than as a fiduciary under ERISA. Therefore, the complaint does not sufficiently allege a claim

for relief under ERISA with regard to BCBSM's decision not to release the specified claims-related information in the manner requested.

## CONCLUSION

For the foregoing reasons, we find that the Fund's complaint sets forth sufficient allegations that BCBSM acted as a fiduciary under ERISA in assessing and failing to disclose the OTG subsidy fees. The Fund's ERISA claim with respect to the requested claims-related information, however, is not sufficiently set forth by the allegations of the complaint and does not provide a separate basis for federal subject matter jurisdiction.

Accordingly, the district court's dismissal of the Fund's claims arising from BCBSM's refusal to release claims-related information is affirmed. We reverse the district court's dismissal of the Fund's claims arising from BCBSM's imposition of the OTG subsidy fee and remand for further proceedings consistent herewith, including consideration of the status of related state law claims. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.