**DANA LIMITED, et al., Plaintiffs**

v.

**AON CONSULTING, INC., Defendant.**

**Case No. 3:13CV456.**

United States District Court,
N.D. Ohio,
Western Division.

Nov. 22, 2013.

---

John M. Stephen, Sara Hutchins Jodka, Porter, Wright, Morris & Arthur, Columbus, OH, Ann M. Caresani, Porter, Wright, Morris & Arthur, Cleveland, OH, for Plaintiffs.

H. Buswell Roberts, Jr., Blacksburg, VA, Janine T. Avila, Connelly, Jackson & Collier, Toledo, OH, Amanda S. Amert, April A. Otterberg, Craig C. Martin, Jenner & Block, Chicago, IL, for Defendant.

## ORDER

JAMES G. CARR, Senior District Judge.

In this case under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and state tort and contract law, plaintiffs (collectively, "Dana") allege that defendant, Aon Consulting, violated its fiduciary duties under ERISA by authorizing pension payments to ineligible recipients. Dana also asserts Aon, in failing to administer the plan properly, committed a host of torts and breached the parties' contract.

Jurisdiction is proper under 29 U.S.C. § 1132 and 28 U.S.C. §§ 1332(a)(1) & 1367(a).

Pending is Aon's partial motion to dismiss the complaint for failure to state a claim. (Doc. 17). For the reasons that follow, I grant the motion.

### Background

Dana established a trust fund to hold contributions to two of its defined-benefit plans (Plan). The Northern Trust Company, as Trustee of the Plan, maintains custody of Plan assets and distributes them to Plan participants per Dana's instructions.

In 2008, Dana decided to outsource Plan administration to Aon. According to the complaint, Aon induced Dana to select it as the Plan's third-party administrator by falsely representing, *inter alia*, it: 1) had "state of the art benefits outsourcing capa-

bilities"; 2) "enforce[d] stringent controls around data integrity"; and 3) would "spend [ ] significant time analyzing, testing and editing" the data on which Plan administration depended. (Doc. 1 at ¶¶ 20, 24, 26).

The parties entered a five-year Employee Benefits Outsourcing Services Agreement (the contract). Under the contract, Dana would provide Aon all data needed to administer the Plan, while Aon would "follow the directions of the plan administrator"—plaintiff Dana Holding Corporation Investment Committee (the Investment Committee)—when performing its contractual obligations. (Doc. 1–2 at 19).

An exhibit to the contract, the "Scope of Services Document" (SSD), defined each party's duties in greater detail. The SSD gave Dana responsibility for "Plan design" and ultimate authority to "make final appeal determinations" with respect to disputed claims. (Doc. 18–1 at 31, 46). In a section of the SSD addressing "Plan Compliance Services," the parties assigned Dana the duty to "[e]xecute fiduciary responsibilities." (*Id.* at 54).

After entering the contract, Dana notified the Trustee that Aon would act as Dana's representative for purposes of "provid[ing] the Trustee with information to make benefit payments." (Doc. 1–3 at 1). Dana advised the Trustee to act "on the basis of ... information [it received from Aon] as if such information constitute[d] a direction from" the Investment Committee itself. (*Id.*).

Dana alleges Aon was responsible for ensuring the accuracy of the data on which it relied in directing the Trustee to pay benefits. According to Dana, Aon should have "periodically reconcil[ed] its payment information with ... the payment data in the records of the Trustee." (Doc. 1 at ¶ 33). However, "Aon failed to conduct a single reconciliation ... until 2012." (*Id.* at ¶ 36).

Dana also alleges its actuary observed "data discrepancies" when performing annual valuations of Plan assets. (*Id.* at ¶ 41). Between 2009 and 2012, the actuary sent Aon "multiple emails" about the discrepancies, but Aon "failed to investigate" them. (*Id.* at ¶¶ 41, 97).

In February, 2012, a union representative notified Dana that a union member had received "an early retirement supplement to which the member was no longer entitled." (*Id.* at ¶ 43). Though Dana notified Aon of the error, the member continued to receive the supplement.

Thereafter, Dana opened an investigation into Aon's administrative practices and discovered that, "between 2009 and 2012, Aon's ... directions to [the Trustee] resulted in pension overpayments of approximately $1.9 million to at least 167 [Plan] participants." (*Id.* at ¶ 46). The investigation also revealed that an Aon employee had stolen $216,653 in Plan assets. The employee, Tisa Crawford, established four accounts under fictitious names and directed the Trustee to make payments to those accounts.

Dana then filed this suit alleging Aon breached its fiduciary duties under ERISA by directing the Trustee to make $1.9 million in pension payments to ineligible recipients.

Dana also asserts Aon negligently performed its duties as third-party administrator and breached the parties' contract. Dana further contends Aon converted plan assets and negligently entrusted control of, and supervision over, those assets to Crawford. Finally, Dana alleges Aon fraudulently induced Dana to select it as its third-party administrator.

Aon seeks dismissal under Rule 12(b)(6) of all Dana's claims except the claim for breach of contract.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"This standard demands that the factual allegations raise a right to relief above the speculative level and nudge the claims across the line from conceivable to plausible." *Erie Cnty. v. Morton Salt, Inc.,* 702 F.3d 860, 867 (6th Cir.2012). Although the plausibility standard "is not akin to a probability requirement," a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, supra,* 556 U.S. at 678, 129 S.Ct. 1937.

### A. Proper Plaintiffs

Before turning to the merits, I note Aon's argument that two of the plaintiffs, Dana Holding Corporation and the Investment Committee, are not entitled to bring certain claims.

Aon contends I should dismiss all of the Holding Corporation's claims because the complaint does not allege the Holding Company: 1) is a party to the contract; 2) is a Plan fiduciary entitled to raise ERISA claims; or 3) was injured by Aon's conduct. Aon also asserts the Investment Committee cannot raise a breach of contract claim because it is not a party to the contract.

Plaintiffs have not responded to either argument, thereby conceding the points. *Cf. Mekani v. Homecomings Fin., LLC,* 752 F.Supp.2d 785, 790 n. 2 (E.D.Mich. 2010) (court may treat plaintiff's failure to respond to argument raised in motion to dismiss as concession).

Accordingly, I will dismiss the Holding Corporation's claims and the Investment Committee's breach-of-contract claim.

### B. ERISA Claims

At the center of the complaint is Dana's contention that Aon was an ERISA fiduciary obligated to act "solely in the interest of [Plan] participants and beneficiaries[.]" (Doc. 1 at ¶ 71).

In count one, Dana alleges Aon breached its fiduciary duty by: 1) failing to reconcile its payment records with those of the Trustee; 2) failing to respond to the union representative's report about the unwarranted early-retirement payment; 3) failing to administer the Plan properly; and 4) directing the Trustee to distribute Plan assets "outside the terms of the Plan[.]" (Doc. 1 at ¶ 72).

In count two, Dana appears to contend Aon engaged in a prohibited transaction under 29 U.S.C. § 1106 by accepting an $8 million fee while failing to administer the plan properly. Count three alleges Dana is entitled to "appropriate equitable relief" for the $2.2 million in losses "direct[ly] and proximate[ly]" caused by Aon's fiduciary breaches. (Doc. 1 at ¶ 87).

Aon argues I should dismiss the ERISA claims because the complaint's allegations fail on their face to sustain Dana's claim about Aon's fiduciary status.

#### 1. Fiduciary Status Under ERISA

"Fiduciary status is the key to unlocking ERISA's civil-enforcement scheme" because any person "found to be a fiduciary [is] personally liable to the ERISA-covered plan for any damages caused by that person's breach of fiduciary duties." *Briscoe v. Fine,* 444 F.3d 478, 486 (6th Cir.2006).

In cases alleging a breach of ERISA fiduciary duties, "the threshold question is not whether the actions of some person employed to provide services

under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

A person is a fiduciary to the extent "(1) he exercises any discretionary authority or discretionary control respecting management of such plan or (2) exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A); *Guyan Int'l, Inc. v. Prof'l Benefits Admin.*, 689 F.3d 793, 798 (6th Cir.2012).

### a. Control Over Plan Assets

■ Dana seeks to hold Aon liable on the theory that Aon had control over Plan assets. In support, Dana alleges Aon: 1) exercised "practical control" over Plan assets when, rather than following Dana's instructions, it "took short-cuts in implement[ing]" the Plan (Doc. 1 at ¶ 26); and 2) must have had control over Plan assets because a former employee managed to divert Plan assets to bank accounts she controlled.

■ "ERISA fiduciary status is broadly triggered with any control over plan assets, [but] the inquiry in each case is granular, asking whether an entity is a fiduciary with respect to the particular activity in question." *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 866 (6th Cir.2013).

The Sixth Circuit has found third-party administrators like Aon liable as fiduciaries under a control-of-assets theory only when the administrator had unilateral authority to dispose of plan assets.

In *Guyan, supra*, 689 F.3d at 796, the third-party administrator received plan assets, established separate bank accounts for the assets, and had authority to write checks on the Plan account. Because this evidence showed the administrator "had control over where Plan funds were deposited and how and when they were disbursed," the Sixth Circuit held the administrator was a fiduciary. *Id.* The court also relied on evidence that the administrator "commingled Plan assets" and "used these Plan funds for its own purposes." *Id.* at 798.

Similarly, in *Briscoe, supra*, 444 F.3d at 488, the Sixth Circuit held a third-party administrator was a fiduciary, not because of "the functions [it] performed" in administering the plan, but because it "exercised sufficient control over plan assets."

The administrator in *Briscoe* received plan assets that it used to pay beneficiaries' medical claims. It maintained a bank account for this purpose and advised the beneficiaries' employer how much money "needed to be deposited into the account from which [the administrator] paid the service providers." *Id.* at 483. When the company collapsed financially, the administrator withdrew its fee directly from plan assets in its possession and remitted the remaining assets to the company.

The Sixth Circuit concluded the administrator was a fiduciary because it "had a substantial amount of money under its control at any given time, and exercised that control by depositing direct payments from ... participants, writing checks to cover approved claims, and allotting to itself a monthly administrative fee." *Id.* at 493.

Unlike these cases, Dana's allegations do not plausibly establish Aon had or exercised unilateral power to dispose of Plan assets. Taken together, the complaint, the contract, and the SSD suggest that Aon acted only as a claims processor and record-keeper. Nowhere does Dana allege, for example, that Aon had Plan assets "under its control at any given time" or

had the power to distribute those assets to Plan beneficiaries. *Briscoe, supra,* 444 F.3d at 493. Indeed, it seems clear from the complaint that the Trustee, rather than Aon, had those powers.

There is no merit to Dana's claim that Aon's failure to follow its instructions in administering the Plan gave it "practical control" over Plan assets. Even assuming Aon failed to administer the Plan properly, that failure resulted only in: 1) its approving claims that should have been rejected; and 2) the Trustee's ensuing payment of those invalid claims. At no point did Aon's alleged lapses result in it gaining power to dispose of Plan assets.

Nor is there merit to Dana's argument that Crawford's ability to divert assets from the Plan shows Aon's control over those assets. Critically, the complaint does not allege Crawford (or any Aon employee, for that matter) withdrew, or had the power to withdraw, funds directly from the Plan. *Cf. Briscoe, supra,* 444 F.3d at 493 (administrator that withdrew its fee directly from assets in its custody was ERISA fiduciary). Rather, the complaint alleges Crawford acted through an intermediary—the Trustee—that controlled Plan assets.

For these reasons, the complaint fails to allege Aon exercised control over Plan assets.

### b. Discretionary Authority Over Plan Management

■ Dana also seeks to hold Aon liable as a fiduciary on the theory that it exercised "discretionary authority or discretionary control" over Plan management.

■ To state a plausible claim under this theory, Dana must allege Aon "performed more than a mere ministerial or contractually compelled function" with respect to the Plan. *Pipefitters Local 636 v.*

*Blue Cross & Blue Shield of Mich.,* 213 Fed.Appx. 473, 477 (6th Cir.2007).

This is so because "a person without the power to make plan policies or interpretations but who performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits, is not a fiduciary under ERISA." *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 455 (6th Cir.1991).

Accordingly, Dana may not proceed on this theory unless it plausibly alleges Aon had "actual decision-making power" with respect to Plan management. *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 535 (7th Cir.1991); *see David P. Coldesina, D.D.S., P.C. v. Estate of Simper,* 407 F.3d 1126, 1132 (10th Cir.2005) ("Discretion exists where a party has the power of free decision or individual choice").

The complaint does not satisfy this standard. The only plausible inferences I can draw from the complaint are that: 1) Dana, not Aon, was responsible for making Plan policies; and 2) Aon was responsible for "processing claims," "applying plan eligibility rules," and "calculating benefits." *Baxter, supra,* 941 F.2d at 455. Indeed, the parties' contract itself required Aon to "follow the directions of [the Holding Corporation when] performing [Plan] services." (Doc. 1–2 at 19).

Moreover, the only part of the SSD assigning either party discretion in the claims-administration realm gave that discretion, insofar as it involved resolution of appeals from disputed claims, to Dana, not Aon. (Doc. 18–1 at 46).

Accepting its allegations as true, Dana's complaint establishes Aon was a traditional third-party administrator performing routine claims-processing activities at Dana's direction. A substantial line of authority holds such administrator are not ERISA

fiduciaries. *Briscoe, supra,* 444 F.3d at 489–490; *Flacche v. Sun Life Assurance Co.,* 958 F.2d 730, 734 (6th Cir.1992) (insurance company not fiduciary where "all of its functions were ministerial"); *Baxter, supra,* 941 F.2d at 456; *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross,* 101 F.3d 1005, 1009 (4th Cir.1996) ("Given Aetna's limited role in processing claims under the Plan and reading a computer screen to determine who is and who is not covered, it is clear that Aetna is not a fiduciary under the Plan."); *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir. 1985).

In opposing the motion to dismiss, Dana concedes "a plan administrator should not be deemed a fiduciary for simply following instructions." (Doc. 26 at 12). However, it contends "Aon was not merely following instructions when it misappropriated plan assets." (Doc. 26 at 12). Rather, "Aon [was taking] significant shortcuts in the implementation of the Plans[.]" (*Id.*).

In other words, Dana's argument is that Aon performed its non-fiduciary duties so poorly that it effectively assumed discretion over Plan administration, thereby becoming a fiduciary.

█ This argument is inconsistent with the principle that "the power to err, as when a clerical employee types an erroneous code onto a computer screen, is not the kind of discretionary authority which turns an administrator into a fiduciary." *IT Corp. v. Gen. Am. Life Ins. Co.,* 107 F.3d 1415, 1421 (9th Cir.1997); *see Guardsmark, Inc. v. BlueCross & BlueShield of Tenn.,* 169 F.Supp.2d 794, 800 (W.D.Tenn. 2001) ("Discretionary authority is more than a mere power to err.").

The U.S. District Court for the District of Colorado elaborated on this point in *Trustees of the Colorado Laborers' Health & Welfare Trust Fund v. Am. Benefit Plan Admin.,* 2006 WL 2632308 (D.Col.), a persuasive opinion rejecting essentially the same argument Dana presses here.

In *Colorado Laborers'* "the rules, regulations, bylaws and policy determinations issued by" by a health care plan's trustees governed the duties of the defendant, the plan's third-party administrator. *Id.* Defendant had primary responsibility, *inter alia,* to "gather[ ] and submit[ ] information to the Fund's stop-loss insurance carriers." *Id.,* *2.

When defendant failed to provide the carriers with timely notice of two large claims (thereby precipitating the carriers' refusal to reimburse the plan for those claims), plaintiffs sued, alleging defendant breached its fiduciary duties under ERISA. According to plaintiffs, defendant had "meaningful discretionary authority or control with respect to the information Defendant gathered and submitted to the Fund's stop-loss insurance carriers." *Id.,* *6.

The district court rejected this argument because defendant was contractually obligated—and therefore lacked discretion whether—to report excessive claims to the carriers:

> [I]t is apparent, from Plaintiffs' own allegations, that when an individual beneficiary's annual claims exceeded $150,000 in a calendar year, Defendant's obligation to report such a claim was automatically triggered. Plaintiffs fail to allege how discretion might enter into such a clerical, mechanical, ministerial calculation.
>
> That Defendant allegedly failed to report two claims ... indicates not that Defendant exercised discretionary authority or control over the Fund, but rather that Defendant made a clerical error or omission.

*Id.,* *6–7.

The court also rejected the argument that defendant was a fiduciary because it

had discretion over the protocols and procedures it adopted to fulfill its reporting obligations under the contract. Because adopting such procedures was "nothing more than a subsidiary function to the administration of the ultimate ministerial task" of communicating with the insurance carriers, the court concluded "[i]t would defy logic to conclude Defendant exercised fiduciary discretion with respect to the execution of functions auxiliary to an ultimate task that is itself ministerial." *Id.*

As in *Colorado Laborers*, Aon was obligated to perform a ministerial function: identify valid benefits claims by applying Plan criteria to the employee data supplied by Dana.

That Aon had discretion to select internal procedures (that were allegedly inadequate) for identifying valid claims does not mean it was a fiduciary with respect to Plan management or administration. It means Aon "fail[ed] to comport with the strictures of [its] contractual relationship" with Dana. *Id.*, *7; see also Pappas, supra*, 923 F.2d at 538 ("we disagree with the implication of Pappas's argument, which is that consultants become fiduciaries when they perform professional functions in a tortious manner, regardless of what capacity they are acting in when their tortious deeds occur").

In short, "neither the terms of [Aon's] agreement with [Dana] nor its day-to-day operations gave [Aon] discretionary authority over plan management." *Briscoe, supra*, 444 F.3d at 490. Thus, Dana has not plausibly alleged Aon exercised discretionary control over Plan management or administration.

Because Dana has not plausibly alleged Aon was an ERISA fiduciary, I will dismiss count one of the complaint.

### 3. Prohibited Transaction

■ Section 406(a)(1) of ERISA, 29 U.S.C. § 1106(a)(1), "regulates the conduct of plan fiduciaries, placing certain transactions outside the scope of their lawful authority." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). "[T]o sustain an alleged transgression of § 406(a), a plaintiff must show that a fiduciary caused the plan to engaged in the allegedly unlawful transaction." *Id.*

Given my determination Aon is not a Plan fiduciary, Dana cannot state a claim for a violation of § 406(a)(1).

■ In the alternative, Dana argues it stated a claim under §. 1132(a)(3), which permits a participant, beneficiary, or fiduciary to bring an action against a non-fiduciary: 1) to "enjoin any act or practice which violates [ERISA] or the terms of the plan"; or 2) for "other appropriate equitable relief" to redress such violations or enforce the terms of ERISA or the plan. 29 U.S.C. § 1132(a)(3). To state a claim under § 1132(a)(3), Dana must allege Aon knowingly participated in a fiduciary's breach of its duties. *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 486 (6th Cir. 2001).

However, there is no basis in the complaint to conclude Aon knew a Plan fiduciary was violating ERISA or the Plan but nevertheless participated in that breach. *Clevenger v. Dillards, Inc.*, 412 F.Supp.2d 832, 844–845 (S.D.Ohio 2006) (dismissing claim where plaintiff failed to allege non-fiduciary's alleged participation in ERISA violation was knowing).

For these reasons, I will dismiss count two of the complaint.

### 4. Request for Equitable Relief

■ ERISA "does not ... authorize 'appropriate equitable relief' at large, but only 'appropriate equitable relief' for the purpose of redressing any violations or

enforcing any provisions' of ERISA or an ERISA plan." *Peacock v. Thomas,* 516 U.S. 349, 353, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). Because Dana has "failed to state a violation of ERISA, [it is] not entitled to any equitable relief." *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 557 (6th Cir.2012). Therefore, I will dismiss count three.[1]

## C. Tort Claims

Dana also seeks to recover against Aon for: 1) its negligent performance of its duties under the contract; 2) negligently supervising Tisa Crawford and negligently entrusting her with supervision or control over Plan assets; and 3) fraudulent misrepresentations inducing Dana to select Aon as its third-party administrator.

### 1. Choice of Law

The parties dispute whether Illinois or Ohio law controls. Aon argues Illinois law applies because Aon operates from Illinois and the Trustee maintains custody of Plan assets in Illinois. Dana, incorporated and based in Ohio, responds that Ohio law governs because Aon's actions injured Dana in Ohio. Dana also contends Aon made the allegedly fraudulent representations in Ohio.

To resolve this issue, I apply the forum state's choice-of-law rules—here, those of Ohio. *Cole v. Mileti,* 133 F.3d 433, 437 (6th Cir.1998).

Despite the parties' disagreement, neither side has demonstrated an actual conflict of laws. Rather, it appears from the cases cited by the parties that the relevant provisions of Illinois and Ohio law of negligence, conversion, and fraud law are essentially the same.

■■■ "Under Ohio law, if two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply." *Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC,* 947 F.Supp.2d 841, 855 (S.D.Ohio 2013).

Because the result would be the same under either state's law, I will apply Ohio law. *Id.*

### 2. Negligence Claims

Count five of the complaint alleges Aon breached its "common law duties to exercise reasonable care and prudence in administering [the Plan]." (Doc. 1 at ¶ 106). Dana contends Aon "failed to act in a reasonably careful and prudent manner" when directing the Trustee to distribute Plan assets to ineligible recipients.

Count six alleges Aon negligently supervised Crawford and negligently entrusting her with supervision or control of Plan assets.

Aon argues the economic-loss doctrine bars both claims because Dana has not alleged the existence of a duty "separate and apart from—and independent of—any obligations Aon incurred under" the parties' contract. (Doc. 17 at 3).

#### a. Economic–Loss Rule

■■■■■ "[W]here a plaintiff has suffered only economic harm as a result of a defendant's breach of duty, the economic-loss rule will bar the tort claim if the duty arose only by contract." *Mulch Mfg., supra,* 947 F.Supp.2d at 856. However, the rule is inapplicable, and a plaintiff suffering only economic damages may proceed in tort, if the defendant breached a duty that does not arise solely from a contract. *Id.*

---

1. Because I am dismissing the ERISA claims, I will deny Aon's motion to strike Dana's jury demand on the ERISA claims (Doc. 19) as moot.

■ A duty is independent of a contract if the defendant would owe that duty "even if no contract existed." *425 Beecher, LLC v. Unizan Bank, Nat'l Ass'n,* 186 Ohio App.3d 214, 230, 927 N.E.2d 46 (2010). Thus, "[p]arties to a contract may face tort liability that arises from the breach of some positive legal duty imposed by law because of the relationship of the parties[.]" *Solid Gold Jewelers v. ADT Sec. Sys., Inc.,* 600 F.Supp.2d 956, 960 (N.D.Ohio 2007).

The only duties Dana alleges here are Aon's common law duties: 1) "to exercise reasonable care and prudence in administering the substantial funds of the Trust to which it was given access to act on behalf of the Plan[,]" (Doc. 1 at ¶ 106); and 2) "not to provide unsupervised access to and authority over their financial affairs to persons who could not be entrusted with such access and authority," (*id.* at ¶ 113).

These duties arise directly from the contractual relationship between Dana and Aon. Indeed, Aon's failure to perform those duties satisfactorily also forms the basis of Dana's claim for breach of contract. Moreover, in claiming Aon owed it a duty to exercise reasonable care in performing the contract, Dana ignores the fact that Aon would owe it no duties whatsoever but for the contract.

Moreover, Dana's efforts to dress up its breach-of-contract claim in language sounding in negligence is insufficient to identify a duty independent of the contract.

■ Under Ohio law, "each contract contains a common law duty to perform the contract with care, skill, reasonable expedience and faithfulness." *Wells Fargo Bank, N.A. v. Fifth Third Bank,* 931 F.Supp.2d 834, 840 (S.D.Ohio 2013). But this duty only "describes how a party is to perform its contractual obligations, i.e., it does not establish a duty independent of the contract." *Id.*

Thus, Dana's allegation that Aon failed to exercise "reasonable care" in performing what are, at bottom, contractual obligations is insufficient to avoid the economic-loss rule.

Nor can Dana skirt the economic-loss rule with a single, conclusory allegation that it suffered "personal and property damages as a result of [Aon's] negligence." (Doc. 26 at 21).

■ First, "a tort claim arising out of a breach of contract 'must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract.'" *Wells Fargo, supra,* 931 F.Supp.2d at 839 (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 684 N.E.2d 1261 (1996)).

Here, Dana has not claimed any damages Aon's alleged negligence caused beyond the damages it seeks to recover for breach of contract. This alone is fatal to Dana's negligence claim. *Id.*

Because Dana has not identified a duty independent of the contract that could support its negligence claims, I conclude the economic-loss rule bars those claims. *Id.*; *Carlquist v. Wells Fargo Bank, N.A.,* 2012 WL 3815646, *5 (N.D.Ohio) (plaintiff's claim "for negligent supervision fails because it deploys the tort claim in the context of a contract dispute"). Therefore, I will dismiss counts five and six.[2]

2. Perhaps recognizing the deficiencies of its negligence claim, Dana attempts in its opposition brief to recast that claim as one for negligent misrepresentation, which Ohio's economic-loss doctrine would not bar. But because "a complaint cannot be amended by briefs in opposition to a motion to dismiss," the negligent-misrepresentation claim is not

### b. Further Obstacle to Negligent Entrustment Claim

■■■■ "In Ohio, the doctrine of negligent entrustment applies only to a defendant who entrusts to a third party an inherently dangerous article that causes physical injury to the plaintiff." *Ventura v. The Cincinnati Enquirer*, 396 F.3d 784, 790 (6th Cir.2005).

Here, the object of entrustment—Plan assets and/or supervision of those assets—is not "an inherently dangerous object." Nor has Dana cited any case where a plaintiff proceeded with a negligent-entrustment claim involving only economic, non-physical injuries.

Therefore, even if the economic-loss rule were inapplicable, Dana still could not state a viable negligent-entrustment claim. For this reason as well, I dismiss count six.

### 3. Conversion

■■■■ In count seven, Dana alleges Aon converted Plan assets "by transferring them to fictitious accounts" and "paying them to [Plan] participants who were not entitled" to receive payments. (Doc. 1 at ¶¶ 120–121).

Aon argues Dana has not pled a conversion claim because it has not specifically identified the converted funds. It also argues Dana cannot recover the Plan assets Crawford stole under a conversion theory because the theft was not within the scope of her employment.

Dana's opposition brief does not respond to these arguments; it merely repeats the allegations in the complaint and argues they suffice to state a conversion claim.

■■■■ "Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a

properly before me. *Gen. Elec. Co. v. S & S*

claim inconsistent with his rights." *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592, 752 N.E.2d 281 (2001).

■■■■ "[T]he essential elements of conversion are: (1) plaintiff's ownership or right to possess the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property; and (3) damages." *Kuvedina, LLC v. Cognizant Tech. Solutions*, 946 F.Supp.2d 749, 761 (S.D.Ohio 2013).

■■■■ "Money may be the subject of a conversion claim only if identification is possible and there is an obligation to deliver," not just a certain sum of money, but rather "the specific money in question." *Id.* Thus, "[c]onversion of money occurs only when the money is specifically earmarked, or capable of identification such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." *Macula v. Lawyers Title Ins. Corp.*, 2008 WL 3874686, *5 (N.D.Ohio).

■■■■ "An action will not lie for the conversion of a mere debt, and where there is only a relationship of a debtor and creditor, not an obligation *to return identical money*, an action for conversion of the funds representing the indebtedness will not lie against the debtor." *NPF IV, Inc. v. Transitional Health Serv.*, 922 F.Supp. 77, 82 (S.D.Ohio 1996) (emphasis added) (citing *Haul Transp. of VA v. Morgan*, 1995 WL 328995, *4 (Ohio App.)).

Dana's conversion claim is insufficient under these principles. First, Dana has not alleged any facts showing the converted funds—*i.e.*, the funds paid to ineligible beneficiaries—are identifiable, whether before the alleged conversion (while the assets were in the Trustee's possession) or

*Sales Co.*, 2012 WL 2921566, *4 (N.D.Ohio).

after (when the ineligible recipients received those assets). Dana does not allege, for example, that the converted funds were in a special or segregated account, as opposed to being dispersed from the pool of Plan assets in the Trustee's possession.

Because Dana does "not allege that [Aon] converted specific segregated, identifiable money, as opposed to a sum certain[,]" Dana may not proceed with its conversion claim. *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 700 (S.D.Ohio 2012).

Second, Dana has not alleged Aon had "to deliver specific money as opposed to merely a certain sum of money." *NPF IV, supra*, 922 F.Supp. at 82. Dana's allegations suggest only that, as a result of the improper payments, Aon caused Dana to suffer a $1.9 million loss; the allegations do not suggest Aon is entitled to recover the exact monies paid to each ineligible beneficiary.

Thus, Dana is "not seeking specific money that was earmarked for [it], but only the cash equivalent thereof." *Fairbanks Mobile Wash, Inc. v. Hubbell*, 2009 WL 294936, *7 (Ohio App.). Accordingly, the conversion claim cannot survive Aon's motion to dismiss. *Macula, supra*, 2008 WL 3874686, *5 (conversion claim insufficient where plaintiffs did not allege defendant was "obligated to return the specific money (i.e., specific bills) to them").

■ Finally, I agree Dana may not use a conversion theory to recover the Plan assets Crawford allegedly stole.

■ "An employer is held liable for the actions of an employee under the doctrine of respondeat superior where the employee's actions are within the scope of his or her employment." *Anderson v. Toeppe*, 116 Ohio App.3d 429, 436, 688 N.E.2d 538 (1996). Furthermore, the employee's "behavior giving rise to the tort must be calculated to further and/or promote the [employer's] business." *Kuhn v. Youlten*, 118 Ohio App.3d 168, 176, 692 N.E.2d 226 (1997).

Dana has not plausibly alleged Crawford was acting within the scope of her employment when she caused the Trustee to distribute Plan assets to the fictitious accounts. Dana does not allege Crawford's theft was calculated to further or promote Aon's business, nor does it allege Aon knew about, authorized, or profited from Crawford's misconduct. Rather, it appears from the complaint Aon fired Crawford upon learning of her faithless and illegal acts.

Accordingly, even assuming Dana's conversion claim were at all viable, Dana would be unable to recover the Plan assets diverted by Crawford.

### 4. Fraudulent Misrepresentation

■ Finally, count eight of the complaint alleges Aon made fraudulent representations about its administrative capabilities that induced Dana to contract with Aon.

■ To state a claim for fraud under the heightened pleading requirements of Fed.R.Civ.P. 9(b) and Ohio law, Dana must, in specific, rather than conclusory terms, allege: 1) a representation or, if a duty to disclose exists, concealment of a fact; 2) material to the transaction at hand; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent to mislead another into relying on the representation; 5) justifiable reliance on the representation or concealment, and 6) a resulting injury proximately caused by the reliance. *Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986). Dana must also "*set forth facts* to support

its claim that the defendant intended to deceive, manipulate or defraud or that its statements were in willful or reckless disregard for the truth." *In re Heparin Prods. Liability Litig.*, 2011 WL 3875361, *3 (N.D.Ohio) (emphasis supplied).

To be sure, Rule 9(b) permits intent and knowledge to "be alleged generally." Fed. R.Civ.P. 9(b). "[B]ut 'generally' is a relative term" that, in the context of Rule 9, "is to be compared to the particularity requirement applicable to fraud or mistake." *Iqbal, supra*, 556 U.S. at 686, 129 S.Ct. 1937. Thus, Rule 9(b) "merely excuses a party from pleading [knowledge or] intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.*

Aon argues Dana's fraud claim fails for five independent reasons, only one of which I need address: namely, Dana's failure to plead facts showing Aon knew the representations at issue were false and made with the intent to mislead Dana into entering the contract.[3]

I agree: Dana sets forth no facts from which I could plausibly infer Aon either knew its representations during contract negotiations were false or made those representations with reckless disregard for the truth. Instead, Dana bases its allegation that Aon knew the representations were false *"on information and belief[.]"* (Doc. 1 at ¶ 126) (emphasis supplied). Likewise, Dana pleads no facts showing Aon made the misrepresentations with the intent to deceive Dana.

Given these deficiencies, I will dismiss Dana's fraud claim. *Iqbal, supra*, 556 U.S.

at 686, 129 S.Ct. 1937; *see Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 406 (6th Cir.2012) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's knowledge of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.") (emphasis in original); *In re Heparin, supra*, 2011 WL 3875361, *4 (dismissing fraud claim where plaintiff pleaded no facts permitting inference "defendants made the statements about the product knowing that they were false, or with the intent to deceive purchasers and consumers of the drug").

**D. Request for Leave to Amend**

Dana concludes its opposition brief by requesting that, if I determine "dismissal is required by lack of clarity or a pleading technicality," I should grant it leave to amend. (Doc. 26 at 26).

This vague, bare-bones request is insufficient to grant leave to amend. *Evans v. Pearson Enter.*, 434 F.3d 839, 853 (6th Cir.2006) (party seeking leave to amend must state grounds for amending complaint with particularity). I therefore deny the request, though without prejudice to Dana's filing a motion for leave to amend the complaint.

However, I deem it appropriate to register my present reservations about any effort to amend the ERISA, negligence, and conversion claims is likely to be futile, given: 1) Aon's status as a third-party administrator performing routine claims-

---

**3.** The additional grounds for dismissal are: 1) Dana cannot satisfied Rule 9(b)'s heightened pleading standard; 2) the alleged misrepresentations concern only non-actionable opinions or statements regarding future actions; 3) Dana cannot allege reasonable reliance on

the representations given that Dana agreed to a provision in the parties' contract stating Aon had made no representations to it other than those set forth in the contract; and 4) any misrepresentations did not proximately cause the damages Dana seeks to recover.

processing activities;[4] 2) the applicability of the economic-loss doctrine; and 3) Dana's silence on the identification element of its conversion claim.

Nevertheless, these reservations do not preclude Dana from making whatever assertions and arguments it believes are appropriate. If Dana wishes to try to obtain leave to amend those claims, it should do so promptly and, in any event, within four weeks of the date of this order.

Dismissal of the fraud claim is likewise without prejudice to later seeking leave to amend during the discovery period. I anticipate that focused discovery as to what Aon knew and intended when it made the allegedly fraudulent statements, whether those statements were mere puffery, the extent, if any, of Dana's actual reliance, and other issues related to the putative fraud will disclose whether Dana can fill in the gaps in its pleading.

### Conclusion

For the reasons stated above, it is

ORDERED THAT:

1. Defendant's partial motion to dismiss (Doc. 17) be, and the same hereby is granted;.

2. Leave be, and the same hereby is granted to plaintiff Dana Limited, within four weeks of the date of this order, to file a motion for leave to amend its ERISA, negligence, and conversion claims. If Dana files such motion, Aon shall respond within two weeks thereafter, and Dana shall reply within one week thereafter;

3. Leave granted to Dana to seek leave, not later than one month prior to the close of the dispositive-mo-tion-related discovery period, to amend its fraud claim. If such motion is filed, Aon shall respond within two weeks, and Dana shall reply within one week.

4. Defendant's motion to strike jury demand as to ERISA claims (Doc. 19) be, and the same hereby is denied as moot.

So ordered.

---

**4.** In this regard, I note the absence of any well-pled facts supporting a plausible inference Aon had decision-making power *vis-a-vis* which beneficiaries got paid and how much those beneficiaries received. If Dana wishes to proceed with its ERISA claims, it should address this issue when seeking leave to amend.